601 A.2d 570 (1991)
Richard HYNSON, Jr., et al., Plaintiffs,
v.
DRUMMOND COAL COMPANY, INC., et al., Defendants.
Civ. A. No. 7904.
Court of Chancery of Delaware, New Castle County.
Submitted: June 7, 1991.
Decided: June 14, 1991.
Norman M. Monhait, of Morris, Rosenthal, Monhait & Gross, P.A., Wilmington, Lowey, Dannenberg, Bemporad & Selinger, P.C., New York City, for plaintiffs.
Richard L. Sutton, of Morris, Nichols, Arsht & Tunnell, Wilmington, Dennis G. Lyons, Hadrian R. Katz, Brendan Collins, and Michael E. Korens, of Arnold & Porter, Washington, D.C., for moving defendants.

OPINION
ALLEN, Chancellor.
Defendants in this stockholders' class action have moved, pursuant to Rule 60(b)(3) and Rule 23, for an order confirming (1) that they are guilty of no fraud or deception that taints the final judgment in this matter entered on February 1, 1990, and (2) that this case was properly certified as a class action under Rule 23(b)(1) and (2). Two factors occasion this motion. First, the certification of this action as a class action under Rule 23(b)(1) and (2) was stipulated by the parties and, after notice and hearing, the court entered the stipulated order without addressing in writing the question whether it was constitutionally permissible, in the circumstances, to bind absent class members to a final judgment without affording them the opportunity to opt-out of the action. The second factor occasioning the motion is the filing by certain class members in the Circuit Court of Jefferson County, Alabama of civil actions against the defendants herein charging them with the same wrongs as those apparently settled and discharged by the final judgment in this case. The apparent premises *571 of those actions are the assertions (1) that, in the absence of an opt-out opportunity, the Alabama plaintiffs are not bound by the final judgment in this class action because there existed, they say, no minimal contact among themselves, the litigation and this jurisdiction that would satisfy traditional notions of fair play and substantial justice and (2) that defendants were guilty of fraud in this action (explained below) that eviscerates the effectiveness of the judgment.
The defendants claim here, and in these newly filed Alabama actions, that this court's final judgment is valid and binding on all members of the class. That final judgment is, they say, entitled to full faith and credit, and as such is a complete bar to any further liability arising from the tender offer-merger transaction from which this case and the Alabama litigation arise. Whether defendants' assertion is sound or not is ultimately a question of federal law that is to be answered in the first instance by the courts of the State of Alabama. But these claims cast a shadow upon this court's processes and since neither of these matters has been addressed in writing by this court, and since it may be helpful to later courts to have this court's view, I take up this procedurally unusual motion.
The central question raised by this motion is of general importance. It is whether a single jurisdiction with in personam jurisdiction over the corporation and all of its directors may, in a single action, conclusively adjudicate[1] whether a corporation's directors have satisfied their fiduciary duties to the corporation and its shareholders in the context of a corporate merger or other corporate transaction. See Nottingham Partners v. Dana, Del.Supr., 564 A.2d 1089 (1989); In the Matter of Colt Indus. Shareholders' Litig., 77 N.Y.2d 185, 565 N.Y.S.2d 755, 566 N.E.2d 1160 (1991).
This question was left unanswered by the Supreme Court of the United States in Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). In Shutts the Supreme Court held that, so long as class members are afforded an opportunity to "opt-out" of the action, the due process clause does not require that all members of a plaintiff class have such "minimal contacts" with the forum jurisdiction as would sustain in personam jurisdiction over each class member under the analysis of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). See Shutts, 472 U.S. at 812, 105 S.Ct. at 2974. The court noted its holding was "limited to those class actions concerning claims wholly or predominately for money judgments. We [the Supreme Court] intimate no view concerning other types of actions, such as those seeking equitable relief." Shutts, 472 U.S. at 811 n. 3, 105 S.Ct. at 2974 n. 3.
In this action, absent plaintiff class members were afforded no right to opt-out. This case therefore raises the question that the presence of such a right eliminated in Shutts: whether, in order to be preclusively bound by a judgment in a properly conducted Rule 23(b)(1) or (b)(2) action (in which no opt-out option is provided), a member of the class must have a sufficient nexus with the rendering jurisdiction as to make permissible exercise of in personam jurisdiction over that person, with respect to the claims in issue? The question as it arises here is, of course, not so general as that. This case involves a particular class of litigation: stockholder action against corporate fiduciaries. That fact supplies important context for addressing the subsidiary question: whether ownership of corporate stock itself constitutes such a relationship with the corporate domiciliary jurisdiction that it is fair to subject the holder of stock to that jurisdiction for the purpose of adjudicating the existence or contours of corporate rights that attach to stock ownership.
For the reasons set forth below, considerations both of efficiency and fairness in our federal system, in my opinion, require that a single adjudication be available in *572 which charges of breach of a director's or controlling shareholder's duty to a corporation and its shareholders may be conclusively determined and all holders of stock bound. It is further my view, as explained below, that where the issue is whether a plaintiff class may be bound to an adjudication of the equitable duty of loyalty created by the law of the incorporating state, that the purchase (or merely holding) of the shares of a corporation of that state itself creates a sufficient relationship with that jurisdiction to permit that jurisdiction to be one in which rights attaching to stock of the corporation may be conclusively adjudicated.

I.

Procedural Background of the Present Motions
This stockholders' class action challenged the propriety of a two-step transaction in which Drummond Coal Company, Inc., ("Drummond") then the majority shareholder of Alabama By-Products, Corp., a Delaware corporation, ("ABC") acquired (through a subsidiary) all of the common stock of ABC. The first leg of this transaction was a December 5, 1984 cash tender offer extended by the subsidiary for up to all of the publicly held ABC shares at $75 per share. The concluding step was an August 1985 cash-out merger at the same $75 per share price, eliminating those shares that had not been previously tendered. At the time of the first of these transactions, Drummond owned, directly and indirectly, approximately 68% of ABC's Class A common stock  the only class of ABC's stock with voting power  and about 45% of ABC's equity.
This action was filed on January 4, 1985. Plaintiff was a holder of Class A and Class B Common Stock. He asserted a class action on behalf of himself and all owners of ABC Common Stock. Defendants were Drummond, its subsidiary that had actually extended the offer, and all of ABC's directors.
The complaint alleged that Drummond, the controlling shareholder, violated the fiduciary duty it owed to the ABC stockholders by structuring a coercive tender offer and issuing a false and misleading offering circular and that the ABC directors had breached their fiduciary duties to the ABC stockholders by causing ABC (i) not to oppose the tender offer, taking instead a neutral position, and (ii) to otherwise fail to protect the interests of ABC's stockholders. The complaint sought to enjoin the tender offer and/or rescind the tender offer. Plaintiff also sought an accounting, and compensatory and/or rescissory damages.[2]
No motion for preliminary injunction was presented. Upon the closing of the tender offer Drummond's direct and indirect ownership of ABC was increased to over 90% of each class of ABC stock.
On August 13, 1985, ABC was merged into a Delaware subsidiary of Drummond under 8 Del.C. § 253. The shares of ABC common stock not then owned by Drummond or its subsidiary were in the merger converted into the right to receive $75.60 per share in cash, subject to the rights of dissent and appraisal set forth in 8 Del.C. § 262.
On December 3, 1985, certain shareholders of ABC who had neither tendered their shares nor voted for the merger instituted a judicial appraisal of the fair value of their stock in this court. See Neal v. Alabama By-Products Corp., Del.Ch., C.A. No. 8282, 1990 WL 109243, Chandler, V.C. (Aug. 1, 1990).
Thereafter, the complaint in this action was amended on February 21, 1985, and again on September 11, 1986, after the consummation of the merger. As amended *573 through the Second Amended Complaint, the action presented essentially the same structure as that of the original complaint. Additional details of the alleged breaches of fiduciary duty were pleaded; a second named plaintiff was added; the merger was mentioned; and an allegation was made that the meeting of the board of directors of ABC that considered ABC's position with respect to the tender offer was invalidly called and held. Rescission of the tender offer and merger was sought, together with an accounting and damages. The class alleged was identical to that of the original complaint, and the gravamen of the amended complaint was still the alleged breach of fiduciary duty by the individual defendants constituting the board of ABC and by Drummond as controlling shareholder of ABC. A motion for class certification under Rule 23(b)(2) was filed on January 21, 1987, but not brought on at that time.
Extensive discovery was taken, including document production, depositions of each of the individual defendants, and depositions of representatives of Drummond's investment advisers. On May 28, 1987, defendants moved for summary judgment. On January 13, 1988, plaintiffs cross-moved for partial summary judgment based on the claim that the individual defendants failed to exercise due care in their consideration and proposal of the tender offer. These motions were under consideration when an agreement in principle of settlement was reached in June 1989.
The Neal appraisal action was tried in this court from June 17, 1989, through July 7, 1989. Post-trial briefing of the appraisal action was completed on October 20, 1989. The trial, as well as the post-trial briefs, were open and available to the general public. Certain, but not all, of the pretrial discovery had been conducted under a confidentiality order.

* * *
While the motions for summary judgment in this action were pending, the attorneys for the class plaintiffs and the attorneys for the defendants, at the court's suggestion, engaged in settlement discussions. These discussions commenced in late 1988 and early 1989, but no settlement was reached. Subsequently, in June 1989, these negotiations were resumed and an agreement in principle to resolve the action was reached. The agreement was not formalized until November 1989.
On November 3, 1989, a Stipulation and Agreement of Compromise and Settlement was submitted to the court in this action. The settlement provided that the action be certified as a class action pursuant to Chancery Rules 23(a), 23(b)(1) and 23(b)(2). The class members included, in the aggregate, all those stockholders of ABC who had been such on December 5, 1984, the day the tender offer was made, except (i) the defendants and (ii) those stockholders who had elected to join in the Neal appraisal action.
The settlement required defendants to pay the sum of five million dollars or $5 per share (approximately) to be held in escrow with interest for the benefit of the class. Prior to completing distribution of the settlement fund to the class, certain expenses of settlement administration and such fees and expenses as the court allowed to plaintiffs' attorneys were to be deducted from the fund, and the exact number of shares in the class was to be determined.
The settlement contemplated, and the court ordered on November 28, 1989, pursuant to Rules 23(a), 23(b)(1) and 23(b)(2), that this action was to be settled as a class action and that the class consisted of all former stockholders of ABC (i) who tendered their shares in response to the tender offer, (ii) who held shares on December 5, 1984, and sold them prior to August 13, 1985, and/or (iii) whose shares were converted by the merger into the right to receive $75.60 per share in cash, excepting in each case (a) the named defendants, their immediate families and/or entities controlled by the defendants, and (b) persons who were entitled to a statutory appraisal of their ABC stock or who settled their appraisal claim ("the class").
Notice was duly mailed to all members of the class on or about November 29, 1989, *574 informing them of the terms of the proposed settlement and of their right to appear at a hearing to object to the certification of the class or to the terms of the settlement.
The notice advised members of the class that:
[a]ny member of the Class who objects to the certification of the Class, the Stipulation, the Settlement, the judgments with respect thereto, and/or the award of attorneys' fees and expenses to plaintiffs' counsel, or who otherwise wishes to be heard, may appear in person or by his attorney at the Hearing and present any evidence or argument that may be proper and relevant....
Any person who fails to object in the manner prescribed above shall be deemed to have waived such objection and shall be forever barred from raising such objection in this or any other action or proceeding.
The notice also made plain that at the hearing "if the settlement is not approved, the class action determination will be vacated." The members of the class were advised that in order to avoid a 20% withholding tax imposed by federal law on persons who are subject to "backup withholding," an IRS form W-9 would have to be executed and returned to the Settlement Administrator. A high proportion of stockholders returned W-9 forms.
On February 1, 1990, the hearing was held to determine whether the maintenance of this action as a class action under Rules 23(a), 23(b)(1) and (b)(2) was appropriate, whether the terms of the proposed settlement were fair, reasonable and adequate and whether the action should be dismissed "with prejudice against ... all members of the class."
No member of the class objected to any aspect of the proposal. After consideration, I entered an Order and Final Judgment (a) approving the terms of the settlement as fair, reasonable and adequate; (b) dismissing the action, and dismissing and releasing any and all claims of plaintiffs and all members of the class which were or which could have been alleged in any of the complaints filed in this action, other than any claim for breach of the settlement, as to all defendants, on the merits and with prejudice; and (c) permanently barring and enjoining the institution or prosecution by any plaintiff or any member of the class, of any other action or proceeding asserting claims against any defendant which were so settled and dismissed or which arose out of the settlement.
In reaching this conclusion, I was motivated in part by the understanding that no Delaware case had yet held that, absent coercion, a controlling shareholder could not offer to buy stock from fellow shareholders at less than an "intrinsically fair" price and that the tender offer price represented a very substantial premium over the prior trading price of the ABC stock. I was also mindful that an investment banker had earlier refused to opine that a similar price was intrinsically fair; that application of comparable company ratios suggested that ABC represented a substantially higher value than either the market price of its stock or the value implied by the $75 per share price of the Drummond acquisition; and that plaintiffs could argue that the tender offer was coercive (in that the offering document suggested future dividend policy was undecided). In these circumstances, and considering other matters relating to the strengths and weaknesses of the claims and that no class members objected to the $5 per share proposed as settlement, I concluded the proposed settlement represented a fair compromise.
Six months later, on August 1, 1990, this Court, through Vice Chancellor Chandler, rendered a decision in the Neal appraisal action which found an appraised value of $180.67 per ABC share.[3] The settlement no longer seemed so appealing to former shareholders who did not seek judicial appraisal.

* * *
*575 On January 8, 1991, Mr. John H. Martin, a former ABC shareholder, filed an action in the Circuit Court for Jefferson County, Alabama, at Birmingham, against the defendants in this action seeking a money judgment for alleged wrongs arising out of the two-step acquisition of ABC by Drummond. Martin v. Drummond Co., Ala.Cir. Ct., No. 91-0143. Former shareholders representing some 400,000 ABC's shares are now party to that action or similar ones. No doubt in response to Mr. Martin's action, defendants moved in this court for an order providing for further notice to the class and a hearing designed to afford to class members an opportunity to seek reconsideration of the class certification question and an opportunity to present any evidence or argument they may wish to present to support any view that the final judgment entered in this course is marred by fraud. Such notice was provided by mail. At the date fixed, no member of the class, except those represented by class counsel, chose to appear, although counsel for Mr. Martin sent the court written statements.

II.
In certifying this action as a Rule 23(b)(1)(A) and (b)(2) class, this court determined that a right to opt-out of the litigation was not constitutionally required. On reconsideration I remain of that view. In my opinion, the device of a properly administered class action may be employed, without affording opt-out rights, to bind all absent shareholder/plaintiffs to a final judgment in an action seeking to vindicate rights attaching to corporate stock, whether those rights are sought to be protected by injunction or compensated by an award of money. To do so is fully in accord with traditional notions of fair play and substantial justice.
An analogy to trust law suggests this conclusion most readily. An action by shareholders against corporate directors for breach of duties owed either to the corporation or to stockholders as a class is both historically and functionally very similar to a judicial accounting by a trustee. Indeed, the fiduciary duty of corporate directors is a court created duty that historically springs from equity's experience with trusts and trustees. See, e.g., Marsh, Are Directors Trustees?, 22 Bus.Law. 35 (Nov. 1966). As with trust beneficiaries, so with corporate shareholders, the law that creates the relationship affords to them a right to hold fiduciaries accountable in equity (although the standards of accountability differ).
Insofar as the potential liability of fiduciaries to "beneficiaries" is concerned, a trust accounting and an action for breach of directors' fiduciary duty are functionally quite similar as well. The cestuis que trusts and the stockholders may reside in a great many jurisdictions. In each case the fiduciary owes a duty of loyalty and care to the fictive entity  to the trust, to the corporation, or to the class. An action seeking to prove a breach of that duty is inescapably a true class action. Relief whether it be by injunction, rescission or an award of money will be determined by reference to the effects of the fiduciary's wrong on the trust or on the corporation or all of its stockholders as a class. Remedy in such an action will not entail individual matters. The present case is an example. If the Drummond tender offer had been determined to constitute a violation of fiduciary duty by the directors or by the controlling shareholder, a number of remedies might have been available  rescission, payment of "damages" to raise the price paid to a "intrinsically fair" price, or constructive trust  but in each case the particularities of any holder would have no bearing on the appropriate remedy.
In trust law, the Supreme Court has recognized that efficient administration of the law and fairness to trustees requires that non-resident beneficiaries may be bound by an adjudication of the trustee's fidelity in a foreign jurisdiction that is the situs of the trust. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Reasons of efficiency as well as fairness require this result. See 5A A. Scott & W. Fratcher, The Law of Trusts § 572, at 189 (4th ed. 1989). Binding non-resident cestuis que trusts to *576 such an adjudication, even if they have done no voluntary act associating themselves with the forum jurisdiction, gives no offense to traditional conceptions of fairness, as Mullane holds.
The efficiency and fairness concerns that support the result in Mullane suggest a similar result where the fiduciaries are corporate directors and the non-resident beneficiaries are not cestuis que trust but holders of corporate stock. Technical differences are less significant than one might think. If it is thought important to the Mullane result that the trust has a "situs" (as a legal fiction) in the jurisdiction of its creation, then one should appreciate that the corporation is present in its domiciliary state in the same way. See 8 W. Fletcher, Cyclopedia Corporations, § 4025 (Perm. ed. 1982). The traditional rule (and still the rule by statute with respect to Delaware corporations)[4] is that stock has its legal situs in the domiciliary jurisdiction. See 11 W. Fletcher, Cyclopedia Corporations, § 5101 (Perm. ed. 1982).

* * *
The parallel between administration of a trust by the jurisdiction creating it and the governance of internal corporate affairs by the jurisdiction creating a corporation might be seen as well when one considers other matters of internal affairs that affect rights and duties of holders of stock.
The universal rule is that internal affairs of a corporation, including "defining the attributes of shares ... and protecting shareholders," CTS Corp. v. Dynamics Corp. of America, 481 U.S. 69, 94, 107 S.Ct. 1637, 1652, 95 L.Ed.2d 67 (1987), are governed by the law of the corporation's domicile. Traditionally this led courts of equity to decline to hear matters concerning the internal affairs of foreign corporations even though in personam power was present, see 17 W. Fletcher, Cyclopedia Corporations, § 8425, et seq. (1982), although this rule has been relaxed in modern times. Id.
In that light, consider whether fundamental fairness (as construed by the International Shoe line of cases) would now require that a non-resident stockholder remain unaffected by a domiciliary adjudication between the corporation and another shareholder of the same class that determined, for example, that shareholders do (or do not) have a right, in the circumstances, to compel the calling of an annual meeting under the statutory law of the corporate domicile, merely because the second shareholder has no connection with the corporate domiciliary state other than ownership of stock in the corporation.
Even though there has been some relaxation of the historical rule that precluded a court of equity from entertaining a suit concerning the internal affairs of a foreign corporation, I suggest that it would be radically inconsistent with our history to suppose that binding an absent shareholder to an actual adjudication in the corporate domicile of the corporate rights of holders of stock is in any sense unfair to that absent shareholder (assuming notice and opportunity to be heard has been afforded). That history has obvious significance when a court must employ a test looking to "traditional notions of fair play and substantial justice." See Burnham v. Superior Court, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) (opinion of Scalia, J.).
Or consider that a Rule 23(b)(1) or (2) declaratory adjudication in the corporate domiciliary jurisdiction determines that a class of preferred stock has no right to vote under given circumstances. Can it be supposed that a court of a sister state would  or would be constitutionally free to  disregard that determination in a later action against the corporation by a holder of that preferred stock who was not a party to the first action? See Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940).
One might seek to distinguish these examples from cases of this sort  involving alleged breaches by directors of fiduciary duties  on the ground that these examples involve only injunctive or declaratory relief and this case, at the time of its settlement, arguably involved only a potential payment *577 of money (either compensating or rescissionary damages). Even if one accepts, arguendo, that this case when settled presented no realistic prospect for any remedy other than an award of money, what constitutional difference could that circumstance make in terms of the considerations that International Shoe points us towards? In all events the question, in terms of personal jurisdiction, must be whether considering all of the circumstances it is fair to bind the non-resident class member to the jurisdictional power of the tribunal. The right to hold directors liable for breaches of loyalty here in issue is no different conceptually from the right to compel a meeting or to determine the right to vote stock. In all three examples the right being asserted is owed to all holders of stock as a class; no holder of stock individually has significance. It would be novel, not consistent with traditional notions of fair play and substantial justice, to in effect hold that the corporate rights of stock as a class (including the right to hold directors accountable) can only be conclusively determined in a jurisdiction in which all holders may be subject to service of process.[5]Mullane seems to point in a different direction.

* * *
Some further support for this view derives from a series of older cases dealing with the ability of a court of the corporate domiciliary state conclusively to determine the obligations of holders of stock in domestic corporations, without joining all holders. The cases arise from the historical fact that in earlier times some corporation statutes imposed limited liability on shareholders in the event of corporate insolvency. See, e.g., Bernheimer v. Converse, 206 U.S. 516, 27 S.Ct. 755, 51 L.Ed. 1163 (1907); Christopher v. Brusselback, 302 U.S. 500, 58 S.Ct. 350, 82 L.Ed. 388 (1938). Imagine a case in which a corporate receiver petitions a court in the corporate domicile for an order adjudicating that an assessment against holders of stock is appropriate and fixing its amount. The receiver then takes her judgment to a foreign jurisdiction in which a shareholder who was not a party to the first action resides, and seeks to enforce it in the courts of that state. E.g., Keehn v. Hodge Drive-It-Yourself, Inc., 146 Ohio St. 45, 64 N.E.2d 117 (1945). In such cases, the Supreme Court has repeatedly held that, even though the first judgment creates no in personam liability, it conclusively does establish the rights and obligations of corporate stock. What is left open is the question whether the defendant in the second action is a "shareholder" who is therefore liable. See Selig v. Hamilton, 234 U.S. 652, 661, 34 S.Ct. 926, 929, 58 L.Ed. 1518 (1914); Great Western Telegraph Co. v. Purdy, 162 U.S. 329, 336-37, 16 S.Ct. 810, 813, 40 L.Ed. 986 (1896).
The facts of Pink v. A.A.A. Highway Express, Inc., 314 U.S. 201, 62 S.Ct. 241, 86 L.Ed. 152 (1941) are representative. It was an action brought against a resident of the state of Georgia by the statutory liquidator of a New York mutual insurance company. Because he bought a life insurance policy the Georgia defendant was allegedly a "member" of the company. The liquidator had obtained an order from the Supreme Court of New York to the effect that each member of the mutual company should pay an assessment in specified amounts aggregating 40% of the premiums earned by the company during the year 1937. All "members" of the corporation were given written notice of the proceeding but none appeared to object to entry of the order.
The Supreme Court of Georgia refused to accord full faith and credit to the order of the New York court on the basis that the defendant had not been served with process and was not subject to in personam jurisdiction in New York. It relitigated the legal question whether, under New York law, a policy holder was a "member" of the mutual company who could be liable for assessments on insolvency. It held that the resident defendant was not a "member" of the corporation and thus not liable. The Supreme Court of the United States, through Chief Justice Stone, upheld this result but, in doing so, it recognized *578 that only the limited question  whether the Georgia defendant was a member of the corporation  was open for adjudication.
The following quotation begins with the recitation of a principle that has pertinence to the present inquiry:
It is a familiar rule that those who become stockholders in a corporation subject themselves to liability for assessment when made in conformity to the statutes of the state of its organization, although they are not made parties to the proceeding for levying it. Hawkins v. Glenn, 131 U.S. 319 [9 S.Ct. 739, 33 L.Ed. 184 (1889)]; Hancock National Bank v. Farnum, 176 U.S. 640 [20 S.Ct. 506, 44 L.Ed. 619 (1900)]; Bernheimer v. Converse, 206 U.S. 516 [27 S.Ct. 755, 51 L.Ed. 1163 (1907)]; Converse v. Hamilton, 224 U.S. 243, 260 [32 S.Ct. 415, 419, 56 L.Ed. 749 (1912)]; Selig v. Hamilton, 234 U.S. 652 [34 S.Ct. 926, 58 L.Ed. 1518 (1914)]; Marin v. Augedahl, 247 U.S. 142 [38 S.Ct. 452, 62 L.Ed. 1038 (1918)]; Broderick v. Rosner, 294 U.S. 629 [55 S.Ct. 589, 79 L.Ed. 1100 (1935)]; Chandler v. Peketz, 297 U.S. 609 [56 S.Ct. 602, 80 L.Ed. 881 (1936)]. Whether we support these legal consequences by reference to consent of the stockholder or to his assumption of a corporate relationship subject to the regulatory power of the state of incorporation, in either case the procedure conforms to accepted principles, involves no want of due process, and is entitled to full faith and credit so far as the necessity and amount of the assessment are concerned. See Christopher v. Brusselback, 302 U.S. 500 [58 S.Ct. 350, 82 L.Ed. 388 (1938)], and cases cited. The like principle has been consistently applied to mutual insurance associations, where the fact that the policyholders were members was not contested. Supreme Council of Royal Arcanum v. Green, 237 U.S. 531 [35 S.Ct. 724, 59 L.Ed. 1089 (1915)]; Modern Woodmen v. Mixer, 267 U.S. 544 [45 S.Ct. 389, 69 L.Ed. 783 (1925)]. The Supreme Court of Georgia found it unnecessary to consider the application of these authorities to the present case, since it decided that respondents, by acquiring the particular form of policy issued by the Indemnity Company, did not become members of it.
It is evident that if the constitutional authority of the Indemnity Company to stand in judgment for its absent members turns on their consent or their assumption of membership in the Company, respondents, who were not parties to the New York proceedings, may defend on the ground that they never became members because they have done no act signifying such consent or assumption. After an assessment has been lawfully levied on the members of a corporation, it is still open to any who were not parties to the assessment proceeding to defend on the ground that they never became stockholders.... Ordinarily this means no more than that they have not acquired or owned stock in the corporation during the relevant period. For a necessary consequence of becoming a stockholder is the assumption of those obligations which, by the laws governing the organization and management of the corporation, attach to stock ownership.
* * * * * *
Where a resident of one state has by stipulation or stock ownership become a member of a corporation or association of another, the state of his residence may have no such domestic interest in preventing him from fulfilling the obligations of membership as would admit of a restricted application of the full faith and credit clause. But it does have a legitimate interest in determining whether its residents have assented to membership obligations sought to be imposed on them by extrastate law to which they are not otherwise subject.
Pink v. A.A.A. Highway Express, Inc., 314 U.S. at 207-08, 210-11, 62 S.Ct. at 245-46, 247.
Cases such as Pink recognize that obligations (and a fortiori rights) that "attach to stock ownership," 314 U.S. at 208, may be conclusively adjudicated (see n. 1 supra) in a judicial proceeding in the state of incorporation. While such proceedings *579 necessarily will leave open the question whether any particular person, not a party to the action, is a stockholder or not, (in this setting, is a member of the class or not) these cases establish that the Fourteenth Amendment does not require that every stockholder be a party in order that each be bound by a judicial determination of the existence or non-existence of rights that "attach to stock ownership." In this respect, these cases are consistent with Mullane and inconsistent with the assertion that an opportunity to opt-out of an adjudication of the corporate rights of holders of ABC stock was mandated by the Fourteenth Amendment in this instance.

* * *
The modern law of personal jurisdiction, of course, takes as it polestar the broad concept of fairness. To recognize that fact however, does not command a different result in corporate law than Mullane reached in trust law. Even if we are to consider the acts of plaintiff as the necessary first step, to our analysis, World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980), the concept of fairness to shareholder plaintiffs should not be pulled from its historical setting, Burnham v. Superior Court, supra, or considered apart from fairness to defendants and efficiency of adjudication in our federal system.
In my opinion, buying stock of a Delaware corporation (or a New York corporation, etc.) is itself a sufficient act to establish a nexus with the jurisdiction that creates and regulates the internal governance of that corporation to render it consistent with traditional notions of fairness to bind the holder of that stock as a plaintiff to adjudications concerning the corporate rights that attach to that stock, including the equitable right to require directors to act with loyalty to the corporation and its shareholders. I say this recognizing that, in many instances, people will in fact buy stock without any understanding of which state has created that corporation and governs its internal affairs. But it is not unreasonable  not inconsistent with traditional notions of fairness, in my opinion  to conclude that the law has long put the buyer of corporate stock on notice that corporate rights attaching to stock ownership may be adjudicated in a single proceeding in another jurisdiction, including at a minimum the corporation's state of incorporation. See Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (Brennan, J., concurring in part and dissenting in part). To hold otherwise is to hold that traditional notions of fairness to plaintiffs requires that corporate directors' cannot be afforded a single adjudication in which the question of their legal and equitable obligations to an aggregate class can be determined. The magnificent generalities of the Fourteenth Amendment should not, I suppose, actually require a result that is both wasteful and unfair. This reasoning applies equally to actions seeking injunctions and to actions seeking an award of money. Compare In the Matter of Colt Indus. Shareholders' Litig., 77 N.Y.2d 185, 565 N.Y.S.2d 755, 566 N.E.2d 1160 (1991).
Thus, considering the language of Rule 23 and the requirements of the United States Constitution I conclude that this action was properly certified as a class action under Rule 23(b)(1)(A) and (b)(2). See Nottingham Partners v. Dana, Del.Supr., 564 A.2d 1089 (1989). It is unlike Raskin v. Birmingham Steel Corporation, Del.Ch., C.A. No. 11365, 1990 WL 193326, Allen, C. (Dec. 4, 1990) in which the class-based breach of fiduciary duty claim was insubstantial and the real claim was a market-based "fraud" claim which had important individual (not class-based) aspects (i.e., damages).

III.
Defendants seek an adjudication of the question whether there was fraud in the conduct of this litigation that would justify this court in setting the final judgment aside. The mechanism for the review sought is Rule 60(b). Defendants seek what is, in effect, a declaratory adjudication since they themselves assert that there was no fraud or other misconduct that would justify setting the final judgment *580 aside. Notice of this application was duly made by mail to all class members, in a form approved by the court. Since no member of the class appeared to be heard on the application, it raises again and in a slightly different context the question whether stockholders can constitutionally be subjected to this court's processes for the purpose of determining rights against corporate directors arising from ownership of corporate stock. As I have already addressed that subject, I pass over it here, finding nothing in the context of a 60(b) motion that would justify a different conclusion.
The issue that defendants tender is quite simple. The record in the Neal appraisal action in this court was placed under seal by consent of the parties.[6] That case was tried in June and July 1989. The trial was open to the public and the trial record was open to the public thereafter. This case was settled by agreement made in June 1989 and formally entered into in a November 1989 Agreement. After notice, a hearing on the fairness of the proposed settlement was held on February 1, 1990. Final judgment was entered on that date. On August 1, 1990 decision in the Neal case was issued.
The assertion by certain class members in a lawsuit filed after the decision in the appraisal case is that they were deceived by the defendant in the appraisal case (ABC itself is the only statutory defendant in an appraisal action) since that defendant secured an order sealing portions of the discovery file in that matter.
This assertion appears to reflect the regrettable excesses to which lawyer misconceptions of the obligation of zealous advocacy can lead. First, and most importantly, the trial record upon which Vice Chancellor Chandler reached his August 1, 1990 decision was fully available to the public at the time of the notice and at the time of the hearing on the fairness of the proposal. Second, even as to matters that were in the court's file but not in the trial record, no application was ever made for access at any time. Any such application by a stockholder would unquestionably have been granted. Third, some members of the appraisal class (such as Mr. Neal himself) were also members of this class action (they tendered some shares and dissented with respect to other shares). They plainly had access to all files at all times. Yet no shareholder objected to the proposed settlement.
Since I conclude that this case was properly certified as a class action under Rule 23(b)(1)(A) and (b)(2), I conclude that former shareholders of ABC are subject to the court's processes to the limited extent necessary to adjudicate their rights as stockholders against the corporation's directors and controlling shareholder. Further, concluding that the members of the class have been afforded reasonable notice and an opportunity to be heard on the questions raised by defendants' Rule 60(b) motion and, finally, concluding that there is no basis in fact to hold either (1) that defendants were guilty of fraud or other wrong in attempting to maintain confidentiality of certain financial information during the discovery phase of the appraisal proceeding or (2) that material information relating to the strength and weaknesses of the claims asserted, the value of ABC or its stock or the fairness of the settlement proposal, was unavailable to members of the class at the time they elected not to oppose the settlement that had been proposed, I reach the opinion that no fraud or other wrong to the class was occasioned by the handling of court records in this matter or in the Neal case.
Defendants may, on notice to counsel, submit a form of order consistent with the foregoing.
NOTES
[1] By that phrase I mean (here and elsewhere in this opinion) an adjudication that binds the corporation and all of its shareholders.
[2] No other suit was filed in any court challenging the tender offer, except one filed in the United States District Court for the Northern District of Alabama on December 21, 1984, under the style of Turner v. Drummond Coal Co. That suit was filed by certain non-tendering stockholders of ABC and pleaded an alleged violation of Section 14(e) of the Securities Exchange Act of 1934. On September 17, 1985, the District Court granted defendants' motion to dismiss on the grounds that non-tendering stockholders had no standing to sue under Section 14(e). No appeal was prosecuted.
[3] That decision was affirmed in the Delaware Supreme Court on March 8, 1991. Alabama By-Products Corp. v. Neal, Del.Supr., 588 A.2d 255 (1991).
[4] See 8 Del.C. § 169 (1983).
[5] Which, of course, means for public companies in no single jurisdiction at all.
[6] The court has since modified its Rule 5 to require a judicial finding of good cause in order to put files under seal.