Joseph DIETER and Josephine Dieter, Michael Stiefel, Richard M. Aghoian and Robert L. Driscoll, Plaintiffs,

v.

PRIME COMPUTER, INC., a Delaware corporation, DR Holdings, Inc., of Delaware, a Delaware corporation, DR Acquisition Corporation, a Delaware corporation, Russell E. Planitzer, Don E. Ackerman and Peter M. Castleman, Defendants.

C.A. No. 12025.

Court of Chancery of Delaware, New Castle County.

Submitted: Feb. 12, 1996.
Decided: May 24, 1996.

Wayne N. Elliott, Michael Hanrahan, Bruce E. Jameson and John E. Tracey of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for Plaintiffs.

Jesse A. Finkelstein and Kevin G. Abrams of Richards, Layton & Finger, Wilmington (Greg A. Danilow of Weil, Gotshal & Manges, New York City, of counsel), for Defendants.

## OPINION

STEELE, Vice Chancellor.

## CONTENTIONS OF PARTIES

On June 27, 1991, Plaintiffs, Joseph and Josephine Dieter ("the Dieters"), filed a motion for class certification arising from an individual and class action claim against Defendants, Prime Computer, Inc. ("Prime"), DR Holdings, Inc. of Delaware ("Holdings"), DR Acquisition Corporation ("Acquisitions"), and three individual Defendants: Russell E. Planitzer ("Planitzer"), Don E. Ackerman ("Ackerman"), and Peter M. Castleman ("Castleman")—collectively the "Individual Defendants." [1] The Complaint, which Plain-

tiffs filed on March 28, 1991, arises from a merger agreement ("the Merger Agreement") detailing a merger (the "Merger") between Prime, Acquisition, and Holdings.[2] The Merger Agreement is dated June 28, 1989.

The Complaint contains five counts: (I) Defendants breached their duty of entire fairness in consummating the Merger on terms unfair to Prime's stockholders, (II) Defendants breached their duty of loyalty to the stockholders of Prime in proceeding with the Merger, (III) the Individual Defendants breached their duty of care by recommending the Merger to the stockholders and by proceeding with the Merger, (IV) the Merger violated 8 *Del.C.* § 251, and (V) Defendants breached their duty of candor and committed equitable fraud in connection with the disclosures they made to Prime's stockholders related to the Merger.

Plaintiffs seek certification of a class consisting of all holders of Prime common stock (excluding Defendants and their affiliates) on the Record Date (December 28, 1989) for the January 30, 1990 [3] Prime stockholder special meeting. Prime's common stockholders voted on and approved the Merger at this meeting. This is the Order ruling on Plaintiffs' motion.

## FACTUAL BACKGROUND

Prime is a Delaware corporation with its offices in Bedford, Massachusetts. Holdings is a Delaware corporation. Holdings is an affiliate of J.H. Whitney & Co. ("Whitney"), a New York limited partnership. Whitney exists to acquire businesses via leverage buyout transactions. Holdings formed Acquisition and DR Merger, Inc. ("DR Merger") to acquire Prime. Both are wholly owned subsidiaries of Holdings.

---

1. In July, 1992, parties bringing separate appraisal actions related to the Merger consolidated them with this action to make discovery more efficient.

2. After the consolidation of appraisal actions, Michael Stiefel ("Stiefel"), Richard Aghoian ("Aghoian"), and Robert Driscoll ("Driscoll") joined the Dieters as class representatives. Stiefel and Aghoian were originally part of the ap-

praisal class. On July 14, 1993, Plaintiffs filed an Amended and Supplemental Complaint adding these three as Plaintiffs.

3. *Plaintiffs' Opening Brief in Support of Their Motion for Class Certification* gives two dates for this stockholder meeting: On page 11, they describe it as "held on January 30, 1990" and as "the January 31, 1990 meeting of Prime's stockholders" on page 17.

The Dieters are common stockholders of Prime. They hold their stock jointly. They purchased all of their shares between October 23, 1989 and December 12, 1989. Driscoll, Aghoian, and Stiefel all held shares as of the record date for the stockholder meeting where the stockholders approved the Merger.

On June 23, 1989, the Prime Board of Directors approved the Merger with Holdings and Acquisition. In the Merger, Acquisition acquired a majority interest in Prime. Pursuant to the Merger Agreement, Planitzer, Ackerman, and Castleman—Acquisition's representatives—became directors of Prime on August 24, 1989.[4] All of Prime's existing directors, except Jack Dulaney ("Dulaney") resigned. On October 16, 1989, Dulaney resigned. Plaintiffs characterize this as the point when Prime's Board of Directors lost its sole remaining disinterested director as that term is generally understood under Delaware law.

The Merger Agreement provided for a tender offer (the "Tender Offer") in which Acquisition would acquire up to 49,520,864 shares of Prime common stock at $21.50 per share. Prime stockholders would receive the option to exchange unpurchased shares for senior subordinated debentures of Holdings (the "Debentures"). The Debentures had a face value of $22. The Merger Agreement required Prime to pay $20 million in expenses to Holdings and Acquisitions immediately.

Prime's Board of Directors amended the Merger Agreement in August, 1989 to reflect a reduction in the Tender Offer price from $21.50 to $20.00 per share. The Board voted to recommend the revised offer to Prime's stockholders. The revised Merger Agreement provided Acquisition would purchase 79 percent of Prime's outstanding common stock at $20.00 in the Tender Offer. The unpurchased shares would convert into the right to receive $22 principal amount of the Debentures. Prime announced the amended Merger Agreement on August 4, 1989.

The Merger Agreement provided for the issuance of Debentures in denominations of $25 and multiples thereof. Holdings did not offer fractional debentures. Instead, Prime stockholders received cash payments representing a proportionate interest in the net proceeds of the sale following the deduction of the transaction costs. The difference between the face value of the Debentures ($22) into which Prime stockholders exchanged their stock and the $25 increments of Debentures Holdings issued caused Prime's minority stockholders to lose some of the value of their shares. Plaintiffs categorize this process as a "squeeze out" and note the added loss of value resulting from the transaction costs relating to the Tender Offer exchange.

The Merger Agreement contained several provisions to protect the minority stockholders for the period between the completion of the Tender Offer and the consummation of the Merger. The Merger Agreement also afforded Prime the right to withdraw from the Merger Agreement if the parties did not complete the Merger by the end of 1989. Another provision required approval of a majority of the disinterested directors on Prime's Board, or approval of the sole disinterested director, to allow Prime to extend the time for performance of any obligation or act of Holdings or Acquisition, or Prime's consent, or Prime's waiver of any rights under the Merger Agreement.

From the time Prime's Board originally approved the revised Merger Agreement to the time Prime's Board had the authority to abandon the Merger, the "junk" bond market collapsed. The Debentures fell under the penumbra of junk bonds. Prime's January 9, 1990 Proxy Statement and Prospectus addressed this issue. Prime's disclosure document indicated "the [Debentures] will trade initially at a substantial discount from their face amount." The document attributed to the devaluation of the Debentures to the "adverse conditions in the market for high yield securities."

In December, 1989, Prime and Holdings announced the Merger would not close by the end of December, 1989. They explained the Securities and Exchange Commission was still reviewing the proxy materials.

4. At the time of the Merger, all three were general partners of Whitney, the parent of Holdings.

Prime pushed back the record date for the stockholder meeting to vote on the Merger from November 24, 1989 to December 28, 1989. For reasons Plaintiffs do not explain, the meeting finally took place on January 30, 1990. The stockholders approved the Merger.[5]

Prior to the approval, Prime retained investment bankers to evaluate the fairness of the Merger. Both Smith Barney, Harris Upham & Co. ("Smith Barney") and The First Boston Corporation ("First Boston") provided fairness opinions dated from early August, 1989 declaring the Merger fair to Prime's stockholders. In November, 1989, Prime requested additional opinions with more narrow scope. First Boston prepared a letter dated November 8, 1989 explaining the Debentures had a market value of 67–80 percent of face value as of August 4, 1989— prior to the disruptions in the junk bond market.

In March, 1991, Holdings offered to repurchase up to $163,780,000 aggregate principal amount of the Debentures at $250 per $1,000 principal amount. Holdings never completed the repurchase because it was under-subscribed. Holdings filed a petition for bankruptcy on August 26, 1992.

## CONCLUSIONS OF LAW

### I. RULE 23 STANDARDS

■ Chancery Court Rule 23(a) requires a plaintiff to establish four elements in order to bring a class action:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Once brought, this Court must determine whether to maintain the class action. *See* Chancery Court Rule 23(b). To maintain the class action this Court must also find:

(1) The prosecution of separate actions by or against individual members of the class would create a risk of:

(A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) The Court finds that the question of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matter pertinent to the findings include:

(A) The interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) The difficulties likely to be encountered in the management of a class actions.

A plaintiff has the burden of satisfying the Court it has met the requirements of Rule 23. *Rosen v. Juniper Petroleum Corp.*, Del. Ch., C.A. No. 7016, Berger, V.C. (Apr. 11, 1986), Mem. op. at 2, 1986 WL 4279.

---

**5.** Plaintiffs insist Acquisition's position as majority stockholder of Prime assured approval of the Merger.

## II. THE UNCHALLENGED ELEMENTS

Defendants do not contest Plaintiffs have met their burden of proof with regard to the first two requirements of Rule 23—(1) numerosity of class members, and (2) common questions of law and fact. After reviewing Plaintiffs' pleadings, I agree Plaintiffs unequivocally satisfy the first two requirements of Rule 23(a).

## III. THE ISSUE OF APPROPRIATE CLASS REPRESENTATIVE

### A. The Dieters

■ Defendants do challenge certain Plaintiffs, the Dieters, as appropriate representatives of the class. They argue the Dieters fail the "typicality" requirement of Rule 23(a)(3). Defendants contend the Dieters cannot serve as class representatives because they are subject to unique defenses. The Dieters' claims are not typical of the other class members' claims "because they purchased all of their shares of Prime stock between October 23, 1989 and December 12, 1989, well after Prime had announced the amended Merger Agreement on August 4, 1989." *Defendants' Answering Brief in Opposition to Plaintiffs' Motion for Class Certification* at 14. This purchase date creates a unique defense. The Dieters knew of the financial terms of the Merger Agreement when they purchased stock after Prime disseminated information surrounding the Merger and its provision for the exchange of Debentures.

Although no Delaware court has spoken to this issue in a class action context, Delaware courts have addressed this type of standing issue in the derivative context. *See Brown v. Automated Mktg. Sys., Inc.,* Del.Ch., C.A. No. 6715, Brown, V.C. (Mar. 22, 1982), Mem. op. at 3, 1982 WL 8782. Vice Chancellor Brown, relying on 8 *Del.C.* § 327, stated:

> to bring any type of derivative action to correct alleged acts of corporate mismanagement it is necessary that the plaintiff either be a stockholder at the time of the transaction complained of, or that his stock thereafter devolve upon him by operation of law.

*Id. Brown* declared the Court would not allow a stockholder to attack a transaction which was approved prior to the plaintiff's purchase of the stock. In that case, the plaintiff had knowledge of a merger agreement at the time she purchased stock which she later challenged in a derivative suit. *Id.* at 2, 3. The company had announced the terms of the agreement by which public shareholders would receive $10 per share in exchange for their elimination from the surviving corporate entity. *Brown* at 2, 3. The plaintiff attempted to enjoin the merger complaining of an improper purpose and inadequate consideration for the public shareholders. *Id.* at 2. Vice Chancellor Brown concluded the merger did not harm the plaintiff in her expectation because she received exactly what the company publicly announced stockholders would receive according to the merger agreement. *Id.* at 5. Her prior knowledge stripped her of standing to bring the derivative action. *Brown* at 5, 6. Thus, she had no grounds to complain about the fairness of the merger. *Id.* at 5. The clear policy behind the ruling prevents the inequity of a plaintiff purchasing stock specifically to maintain a derivative action to attack a transaction which occurred before that plaintiff's purchase of the stock. *See id.* at 3; *Maclary v. Pleasant Hills, Inc.,* Del. Ch., 109 A.2d 830, 833 (1954).

The same policy and the rationale supporting it would arguably apply here as well. The challenged transaction is Prime's Board of Directors' approval of the Merger. The alleged breach of fiduciary duty occurred at the time the Board approved the Merger Agreement—June 23, 1989. It is not the Merger that constitutes the wrongful act of which Plaintiffs complain; it is the "fixing of the terms of the transaction." *See Brown* at 6. The Dieters will be subject to a defense that there is no continuing wrong. *Id.* Arguably, Defendants' refusal to cancel the Merger was not the wrongful act producing allegations of breach of fiduciary duty; it was the original decision to effectuate the Merger. The Dieters were not stockholders at the time of the alleged breach of fiduciary duty. They purchased their stock months later. While this conclusion does not address the merits of the defense, the spectre of the defense does disqualify the Dieters as appro-

priate class representatives. The Dieters are not typical of the class which owned Prime stock before the announcement of the amended Merger Agreement.[6] I cannot certify them as class representatives.

### B. The Remaining Plaintiffs

Nevertheless, the other Plaintiffs—Stiefel, Aghoian, and Driscoll are proper representatives of the class. Defendants claim Plaintiffs' counsel's "questionable solicitation" of Stiefel and Aghoian precludes certification.[7] I do not agree.

▮ Consistent with this Court's December 11, 1995 decision on *Plaintiffs' Motion for a Protective Order*, this Court will not interfere in matters tantamount to discipline of counsel unless counsel's conduct "prejudices the fairness of the proceedings, such that it adversely affects the fair and efficient administration of justice...." *In re Appeal of Infotechnology*, Del.Supr., 582 A.2d 215, 216–17 (1990). The record does not indicate Plaintiffs' counsel's conduct, even as Defendants allege, prejudices the fairness of these proceedings to any degree. Plaintiffs' counsel, representing the parties seeking appraisal as well as those pursuing the class action, had a responsibility to inform all those they represented about the status of the litigation. *See Transcript from Oral Argument of Plaintiffs' Motion for a Protective Order*, pages 43–47. After all, Vice Chancellor Hartnett's Order consolidating the cases for discovery certainly suggests it would be appropriate for counsel to keep all of their clients informed about the progress of the entire action. There is no need to revisit this issue. Defendants do not seriously contend these prospective lead Plaintiffs are subject to atypical defenses nor that they cannot otherwise fairly and adequately protect the interests of the class. I certify Stiefel, Aghoian, and Driscoll as representatives of the class. By concluding the three are proper representatives of the class, I find the threshold requirements of Rule 23(a) are met. The next step is to determine which designation for certification under Rule 23 applies.

## IV. CERTIFICATION DESIGNATION

Plaintiffs urge this Court to certify the class under their preferred subsections of Rule 23—(b)(1) or (b)(2). The advantage of certification under Rule 23(b)(1) or (b)(2) is that decisions are *res judicata* as to the entire class. *Joseph v. Shell Oil Co.*, Del.Ch., C.A. No. 7450, Hartnett, V.C. (Feb. 8, 1995), Mem. op. at 9, 1985 WL 21125.. Although Plaintiffs prefer the former, they agree Rule 23(b)(3) is also an appropriate category. Defendants contend Plaintiffs' claims (excluding Count V)[8] are inappropriate for certification under any subsection other than Rule 23(b)(3).

### A. Certification is Inappropriate Under Rule 23(b)(2)

I will, as counsel have in their briefings, first address the issues (b)(2) poses.

Plaintiffs attempt to justify Rule 23(b)(2) certification by likening this case to *Hynson v. Drummond Coal Co., Inc.*, Del.Ch., 601 A.2d 570 (1991). In *Hynson*, Chancellor Allen wrote:

> In my opinion, the device of a properly administered class action may be employed, without affording opt-out rights, to bind all absent shareholder/plaintiffs to a final judgment in an action seeking to vindicate rights attaching to corporate stock, whether those rights are sought to be protected by injunction *or* compensated by an award of money. To do so is fully in accord with traditional notions of fair play and substantial justice. (emphasis added).

\*   \*   \*   \*   \*   \*

Moreover, Defendants do not argue Stiefel, Aghoian, and Driscoll fail to satisfy the requirements of Rule 23(a). After reviewing the record, I find they unequivocally satisfy all criteria.

---

6. Accordingly, there is no need to address Defendants' argument in relation to the Dieters' "complete unfamiliarity with the facts of this case."

7. Defendants do not allege unscrupulous communication with Driscoll. In effect, they concede Driscoll is an adequate representative of the class.

8. Defendants contend Count V—Plaintiffs' claim for equitable fraud—is inappropriate for a class action. I address this argument *infra*.

An action seeking to prove a breach of [a fiduciary] duty is inescapably a true class action. Relief whether it be by injunction, rescission *or* an award of money will be determined by reference to the effects of the fiduciary's wrong the trust or on the corporation or all of its stockholders as a class. (emphasis is original).

*Hynson*, 601 A.2d at 575. In *Hynson*, the plaintiff requested primarily equitable relief—to enjoin the challenged tender offer and/or to rescind the tender offer. *Id.* at 572. The plaintiff sought secondary relief by way of an accounting and compensatory and/or rescissory damages. *Id.*

Plaintiffs also point to *In re Mobile Communications Corp. of America, Inc. Consolidated Litig.*, Del.Ch., C.A. No. 10627, 10638, 10644, 10656, and 10697, Allen, C. (Jan. 7, 1991), Mem. op. at 36–37, 1991 WL 1392, *aff'd*, Del.Supr., 608 A.2d 729, *cert. denied sub nom, Fleck v. Mobile Communications Corp. of America, Inc.*, 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992), to support their premise Rule 23(b)(1) and (b)(2) are well-suited for claims of breach of fiduciary duty. Chancellor Allen explained Rule 23(b)(1) and (b)(2) are proper certification classes for an action challenging the propriety of director action in connection with a merger transaction. *Id.* at 34. However, he also noted such certification is typically paired with a plaintiff seeking *equitable* relief.[9] *Id.* This comports with his reasoning in *Hynson* which focused not only on the basis for the cause of action, breach of directors' fiduciary duties, but also upon the important fact that the plaintiff sought equitable relief to qualify for class certification under Rule 23(b)(1) or (b)(2).

■ In their *Amended Complaint,* Plaintiffs request: (1) "compensatory, equitable and/or rescissory damages," (2) certification of the class, (3) reasonable attorneys' fees, and (4) any additional relief this Court deems appropriate. The *Amended Complaint* offers no further detail concerning the appropriate nature of the injunctive relief sought. Plaintiffs concede they are not seeking to enjoin the Merger. *Plaintiffs' Opening Brief on Their Motion for Class Certification* at 31. Plaintiffs' only reference to the specific equitable relief they seek is on the same page: "Plaintiffs seek compensatory, equitable or rescissory relief which *could include injunctive relief* [presumably mandatory] *requiring Prime to issue stock to the class members.*" (emphasis added). There has been no subsequent development in the facts to warrant speculation any additional claim for equitable relief might spring from the underlying scenario.

Further, it seems important here Defendants do not seek the protection the Court of Chancery Rules otherwise afford them through certification under (b)(1) or (b)(2). Since this is an ex-post merger action, perhaps Defendants do not seek the protection because Plaintiffs do not seek injunctive relief to prevent the merger. Rule 23(b)(2) specifically speaks to actions of the party opposing the class which make "final injunctive relief or corresponding declaratory relief [appropriate] with respect to the class as a whole." Here, looking for the same flexibility and efficiency the Chancellor sought under the facts of *Hynson,* we can best achieve the correct result consistent with the express language of the Rule by focusing on the nature of the relief Plaintiffs seek. Viewed within the entire context of the claims made, without comment on the merits, one must realistically conclude the overwhelming thrust of the action is for compensatory damages.

Therefore, one fairly concludes Plaintiffs' primary request for relief is monetary damages. Their equitable claim is less substantive than their dominant claim for money damages. In fact, Plaintiffs' request for issuance of stock itself has a compensatory component. One could characterize only the order necessary to force its issuance in equitable terms. The order's effect would be, quite simply, an award of additional damages.

**9.** In *In re Mobile,* Chancellor Allen specified, "[plaintiffs' claims made] final *equitable* relief with respect to the whole class appropriate (Rule 23(b)(2))." (emphasis added). *In re Mobile,* at 36.

Rule 23(b)(2) "applies to class actions for class-wide injunctive or declaratory relief." *Rutherglen, Notice, Scope, and Preclusion in Title VII Class Actions*, 69 Va.L.R. 11, 22 (1983); *see, e.g., Nottingham Partners v. Dana*, Del.Supr., 564 A.2d 1089, 1095 (1989); *Wacht v. Continental Hosts, Ltd.*, Del.Ch., C.A. No. 7954, Chandler, V.C. (Sept. 16, 1994), Mem. op. at 21, 1994 WL 525222; *Joseph* at 10. Here, where the relief Plaintiffs request suggests no true equitable or declaratory relief required for certification under (b)(2), I cannot certify the class under Rule 23(b)(2).

### B. Certification is Inappropriate Under Rule 23(b)(1)

■ Subsection (b)(1) is inappropriate for class certification in this case. *See In re Dennis Greenman Sec. Litig.*, 829 F.2d 1539, 1545 (11th Cir.1987), *reh'g denied*, 840 F.2d 25 (11th Cir.1988). That court, applying federal law (which Delaware Courts often find helpful),[10] found class certification inappropriate under Rule 23(b)(1) where a plaintiff sought solely compensatory damages. Here, Plaintiffs seek only compensatory damages although they couch part of their request as injunctive relief, i.e., the issuance of stock. The *In re Dennis Greenman Sec. Litig.* court explained,

> Many courts confronting the issue [of inconsistent or varying adjudications] have held that Rule 23(b)(1)(A) does not apply to actions seeking compensatory damages. (citations omitted). These courts reason that inconsistent standards for future conduct are not created because a defendant might be found liable to some plaintiffs and not to others. *See In re Bendectin Products Liability Litig.*, 749 F.2d [300] 305 [ (6th Cir.1984) ]. Implicit in these decisions is the view that only actions seeking declaratory or injunctive relief can be certified under this section. *See Abramovitz v. Ahern*, 96 F.R.D. 208, 215 (D.Conn. 1982). Underlying is the concern that if compensatory damage actions can be certi-

fied under Rule 23(b)(1)(A), then all actions could be certified under the section, thereby making the other subsections of Rule 23 meaningless, particularly Rule 23(b)(3). *See McDonnell Douglas [v. U.S. Dist. Court for Central Dist. of Cal. ]*, 523 F.2d [1083] at 1086 [ (9th Cir.1975) ].

829 F.2d at 1545.

I am sympathetic to Plaintiffs' argument Rule 23(b)(1) certification promotes judicial efficiency and that any ruling by this Court on a breach of fiduciary duty could not result in different conclusions on liability as to different Plaintiffs. Generally speaking, prosecution of separate actions by members of the class alleging breach of fiduciary duties might well create a risk of inconsistent results which would establish incompatible standards of conduct for Defendants. Decisions in causes of action alleging breach of fiduciary duty by directors will impact uniformly upon the stockholder members of the class.

Nonetheless, "the propriety of certification under the various subsections is quite controversial and not well defined." *Dennis Greenman Sec. Litig.*, 829 F.2d at 1543. The "practical differences" between certification under one as opposed to another subsection "requires a balance between an individual's due process rights and the judiciary's need to expedite the orderly resolution of conflict." *Id.* In this case, no party urges a focus on the need for notice or opt-out provisions' effect on their respective rights. No party argues certification under (b)(3), as opposed to (b)(1), would impair the need for expeditious, orderly resolution of this dispute. There is little likelihood in this ex-post merger action courts would impose opposing and irreconcilable orders on Defendants, or at this stage, that Plaintiffs would sue them for different and incompatible affirmative relief. *See Employers Ins. of Wausau v. FDIC*, 112 F.R.D. 52, 54 (E.D.Tenn.1986). Moreover, a comprehensive umbrella for certification under Rule 23(b)(1) would render classifications

---

**10.** "Chancery Court Rule 23 is almost identical to Rule 23 of the Federal Rules of Civil Procedure. Accordingly, in construing Chancery Court Rule 23, we find persuasive authority in the Advisory Committee's Note on the federal rule and the interpretation of that rule by the federal courts. *See Hoffman v. Cohen*, Del.Supr., 538 A.2d 1096, 1097–98 (1988)." *Nottingham Partners*, 564 A.2d at 1094.

under (b)(2) and (b)(3) obsolete. *See In re Dennis Greenman Sec. Litig.*, 829 F.2d at 1545.

In exercising the discretion generally granted to trial judges in these cases, I believe I must focus, as Vice Chancellor Jacobs has suggested, on the "posture of the case as it realistically exists at the time of the certification." *Frazer v. Worldwide Energy Corp.*, Del.Ch., C.A. No. 8822, Jacobs, V.C. (May 3, 1990), Mem. op. at 6, 1990 WL 61192. This focus, as the detailed discussion in *Nottingham Partners, supra*, suggests, should be on both the underlying cause and the remedial measures Plaintiffs seek. Is the thrust *primarily* equitable or declaratory relief for the class as a whole, or is it *primarily* compensatory relief?

*Nottingham Partners* does not relegate (b)(3) actions to compensatory damages alone but focuses on examination of the predominate thrust of the action. I conclude the claim for structured equitable relief is little more than an artful addition to the compensatory damage claim. Therefore, it is inappropriate under these unique facts to certify the action under Rule 23(b)(1).

### C. Certification is Appropriate Under Rule 23(b)(3)

■ I certify the class under Rule 23(b)(3). Subparagraph (b)(3) is the "damage class action" because courts have traditionally applied subdivision (b)(3) to class actions seeking relief in the form of damages. *Nottingham Partners*, Del.Supr., 564 A.2d at 1095–96. Claims for breach of fiduciary duty and misrepresentation are quintessential bases for certification under subsection (b)(3). *See, e.g., J.L. Schiffman and Co., Inc. v. Standard Indus., Inc.*, Del.Ch., C.A. No. 11267, Allen, C. (Jul. 19, 1993), Mem. op. at 4, 1993 WL 271441; *Marhart, Inc. v. CalMat Co.*, Del.Ch., C.A. No. 11820, Berger, V.C. (Apr. 22, 1992), Mem. op. at 10, 1992 WL 82365; *Zirn v. VLI Corp.*, Del.Ch., C.A. No. 9488, Hartnett, V.C. (Feb. 15, 1991), Mem. op. at 16, 1991 WL 20378; *Singer v. Magnavox*, Del.Ch., C.A. No. 4929, Brown, V.C. (Dec. 14, 1978), Mem. op. at 3, 1978 WL 4651. The absence of a genuinely substantive claim for equitable relief reinforces the principle's application on the facts of this case. Subsection (b)(3) is most appropriate for Plaintiffs' class certification.

### V. COUNT V'S ALLEGATION OF EQUITABLE FRAUD

■ The final issue is to determine whether this Court can certify Count V of the *Amended Complaint*—Plaintiffs' claim for equitable fraud. The Supreme Court has spoken directly to this issue. *See Gaffin v. Teledyne, Inc.* Del.Supr., 611 A.2d 467, 474 (1992). Plaintiffs claim the disclosures which the Proxy Statement contained were materially misleading and incomplete. They allege Prime fraudulently and deliberately designed to secure the minority stockholders' acquiescence to the Merger. *Amended Complaint* at 40–43.

In *Gaffin*, the Supreme Court wrote: "a class action may not be maintained in a purely common law or equitable fraud case since individual question of law or fact, particularly as to the element of justifiable reliance, will inevitably predominate over common questions of law or fact." 611 A.2d at 474; *see also Emerald Partners v. Berlin*, Del.Ch., C.A. No. 9700, Steele, V.C. (Sept. 22, 1995), Mem. op. at 21–22, 1995 WL 600881 (citing *Gaffin* in refusing to allow plaintiff to bring a class action for fraud).

There is no mystery to this policy. Logic suggests each individual shareholder would, given its unique personal circumstances, find a court examining its position differently in order to determine whether and to what extent it relied on the disclosures to reach a decision on the actions solicited. In light of the explicit language from the Supreme Court, I cannot certify Count V.

I certify the class as to Counts I–IV of Plaintiffs' claim under Rule 23(b)(3). Plaintiffs, Stiefel, Aghoian, and Driscoll may serve as representatives of the class. A separate order will follow.