**Stuart TURNER and Richard
A. Bernstein, Plaintiffs,**

v.

**Joel E. BERNSTEIN, M.D., James L.
Currie, Frank A. Ehmann, Neal S.
Penneys, M.D., Jeremy Silverman and
Laura Pearl, Defendants.**

**Civil Action No. 16190.**

Court of Chancery of Delaware,
Castle County.

Submitted: Aug. 4, 2000.
Decided: Aug. 11, 2000.

Ronald A. Brown, Jr., of Prickett, Jones & Elliott, Wilmington, Delaware, for Plaintiffs.

Gregory V. Varallo, and Russell C. Silberglied, of Richards, Layton & Finger, Wilmington, Delaware; Of Counsel: Professor Martin H. Redish, Michael S. Poulos, and Lucinda J. Bach, of Piper Marbury Rudnick & Wolfe, Chicago, Illinois, for Defendants, of counsel.

STRINE, Vice Chancellor.

This opinion resolves a hotly-contested motion for class certification in a case alleging that the former directors of Gen-Derm Corporation failed to disclose all the material facts necessary to permit the GenDerm stockholders to make an informed judgment whether to accept the consideration offered in a December 1997 merger with a wholly-owned subsidiary of Medicis Pharmaceutical Corporation (the "Merger") or to seek appraisal.

I resolve the motion in favor of the plaintiffs. In so doing, I make three principal determinations.

First, I conclude that the class may be certified under Court of Chancery Rule 23(1)(b). This case requires a determination of whether corporate fiduciaries have committed breaches of fiduciary duty in connection with a corporate transaction and, if so, what the appropriate class-wide remedy should be. Because those issues involve questions of law and fact common to the entire "Proposed Class" and because there are no material questions of law or fact dependent on the individual circumstances of members of the Proposed Class, Rule 23(1)(b) certification is appropriate.[1]

Second, I find that class certification is not untimely, even though summary judgment has been entered against the defendant-directors on the question of liability. I reach this conclusion because the defendant-directors made a tactical decision to defer responding to the plaintiffs' timely filed class certification motion, have treated this case as a class action all along, and thus face no unfair prejudice.[2]

Finally, I reject the defendants' argument that the named plaintiffs cannot adequately represent the Proposed Class because the defendants solicited affidavits from potential class members stating that those potential class members did not wish to participate in this lawsuit. I give little weight to those affidavits, which were procured two years ago by self-interested fiduciaries accused of a serious breach of duty. While the affiants face absolutely no harm if this action goes forward, they face

---

1. *E.g., In re Mobile Communications Corporation of America, Inc. Consolidated Litig.,* Del. Ch., C.A. Nos. 10627, 10638, 10644, 10656, 10697, mem. op., 1991 WL 1392, Allen, C. (Jan. 7, 1991) (discussed in detail, *infra*), *aff'd,* Del.Supr., 608 A.2d 729 (1992), *cert. denied,* 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992); *Wacht v. Continental Hosts, Ltd.,* Del.Ch., C.A. No. 7954, mem. op., 1994 WL 525222, Chandler, V.C. (Sept. 16, 1994) (discussed in detail, *infra*.).

2. *See Wacht,* mem. op., 1994 WL 525222.

potentially serious harm if the court denies certification on the questionable basis that members of the Proposed Class have signed away their rights based on an unsupervised, potentially one-sided presentation of the facts made in advance of their receipt of any court-approved notice.[3]

## I. *Factual Background*

This opinion resolves the latest dust-up between the parties in this litigation arising out of the Merger in which Medicis acquired GenDerm Corporation for an upfront cash payment of $3.64 per share and the potential for up to an additional $2.33 per share depending on certain post-Merger events. Plaintiffs Stuart Turner and Richard A. Bernstein now press their motion to certify a class of the former stockholders of GenDerm Corporation pursuant to Court of Chancery Rule 23(b)(1).[4] The Proposed Class is to consist of all holders of common stock as of the date of the Merger and their successors in interest and transferees and assigns, excluding defendants and their affiliates. The plaintiffs' class certification motion was originally filed on June 9, 1998 – less than five months after they filed their complaint.

After the filing of the class certification motion, the parties chose to devote their attention to matters other than completing briefing on that motion. Rather than submitting an answering brief to the plaintiffs' brief in support of the class certification motion and seeking a prompt resolution of that motion by the court, the defendants pressed for a decision on a motion to dismiss. The plaintiffs opposed the motion to dismiss and filed their own motion for summary judgment.

This court, per Vice Chancellor Jacobs, ruled on those motions on February 9, 1999 and dismissed several of the claims against the defendants.[5] The Vice Chancellor did not dismiss the plaintiffs' claim that the defendants who were members of the GenDerm board before the Merger ("the defendant-directors") had breached their fiduciary duties by failing to disclose to the GenDerm stockholders all material facts bearing on the decision whether to accept the Merger consideration or seek appraisal. But he was unwilling to grant summary judgment to the plaintiffs on that claim until the defendant-directors had an opportunity to conduct discovery on certain affirmative defenses.[6]

While those motions were pending, the defendants had not forgotten that the plaintiffs were seeking to litigate this case on a class action basis. To the contrary, the defendants were so aware of the class action nature of the litigation that they had

---

3. As I indicated in *In re Gaylord Container Corporation Shareholders Litig.*, Del.Ch., 747 A.2d 71, 72 n. 1 (1999), the fact that parties fail to press for a timely resolution of certification issues in too many purported class actions brought in this court is a matter of serious concern. It may well be that a more rigid approach should be taken through an amendment to Court of Chancery Rule 23(c)(1) that would set a firm deadline for the filing and resolution of certification motions.

4. The plaintiffs also sought certification under Rule 23(b)(2). Because the relief they seek is monetary damages only and the only declaratory relief they request is a now-extent liability finding, the plaintiffs have rightly stressed only Rule 23(b)(1) in litigating this motion. Ironically, the defendants themselves, however, desire an alternative final remedy consisting primarily of a supplemental disclosure that would give the Proposed Class informa-

tion about GenDerm's value at the Merger date and the opportunity to elect to participate in a quasi-appraisal action. Defs.' Br. at 27. This bolsters the notion that a Rule 23(b)(2) certification may also be appropriate. *See, e.g., In re Amsted Industries, Inc. Litig.*, Del.Ch., C.A. No. 8224, lett. op. at 3, 1986 WL 12466, at *1–*2, Allen, C. (Nov. 3, 1988) (plaintiffs' challenge to consummated merger could be certified under Rule 23(b)(2) when the court could not conclude that equitable relief might not be the predominant relief granted). While I do not rule out the possibility that such a remedy might be appropriate in the future, I do not reach that issue now.

5. *Turner v. Bernstein I*, Del.Ch., C.A. No. 16190, mem. op., 1999 WL 66532, Jacobs, V.C. (Feb. 9, 1999).

6. *Id.*, 1999 WL 66532, at *8.

defendant Joel Bernstein, M.D. ("Dr. Bernstein"), GenDerm's former Chief Executive Officer, and other defendant-directors solicit affidavits from former GenDerm stockholders attesting that they do not support this litigation and do not wish to be a part of any certified class. The affidavits are virtually identical[7] and state in part that:

6. I was and continue to be satisfied with the merger consideration I received in the exchange for my shares and do not wish to exercise any alternative appraisal right. I did not, and do not believe that additional information was necessary for me to make an informed decision whether to demand an appraisal. I believed at the time I transmitted my shares, and continue to believe, that I received fair value for my GenDerm shares.

7. In light of the foregoing, I have no interest in proceeding with any action, either individually or as part of a class, against any of the named defendants based upon the allegations in the Complaint filed in this action. In short, I stand by my election to receive the merger consideration regardless of the outcome of plaintiffs' litigation.

8. I understand that plaintiffs' Complaint asks that a class be formed of all shareholders of GenDerm excluding the named defendants. I do not wish to be part of such a class, or to be represented by plaintiffs or their law firms, neither of which I believe would adequately represent my interests. Moreover, if plaintiffs' proposed class were allowed by the Court, I would choose not to participate in and would exclude myself from such a class, and I would not participate in any proposed appraisal or other proceeding.

9. I was contacted regarding this Affidavit and the lawsuit by Dr. Joel E. Bernstein. Dr. Bernstein explained that he is a defendant in the litigation and that he was seeking the execution of this Affidavit on his behalf. He also explained that I was free to contact plaintiffs' counsel, counsel representing other defendants, or independent counsel of my choosing regarding the allegations in the Complaint and this Affidavit. I have not been coerced, threatened or offered anything of value by counsel regarding this Affidavit, which I have signed of my own free will and based upon my independent judgment.[8]

Even in a court that handles class action litigation on a regular basis, this solicitation tactic stands out as an unusually vigorous approach to opposing class certification. But despite having undertaken such an extraordinary effort, the defendants continued to stand mute in the face of the plaintiffs' certification motion even after Vice Chancellor Jacobs ruled on the original dispositive motions in the case.

For their part, the plaintiffs did not demand an office conference with the court to set a schedule for the disposition of that motion either. Instead, the plaintiffs brought on a renewed motion for summary judgment, coincident with discovery motions brought by the defendants. In the course of scheduling and disposing of these motions, the court was informed of the plaintiffs' unhappiness with the defendants' solicitation of affidavits from prospective class members and of the defendants' position that a class should not be certified. Yet neither side suggested that the court should defer disposing of the summary judgment and discovery motions until after a ruling on the class certification motion.

Instead, the parties fully briefed and argued the summary judgment and discovery motions. Thereafter, I issued an opinion rejecting the defendant-directors' defenses and concluding that the defendant-

---

7. So identical that Dr. Bernstein's affidavit has him confessing to talking to himself. Some of the affidavits are slightly different in wording, but every version appears to be a form created by counsel for Dr. Bernstein and his fellow defendant-directors.

8. Defs. Ex. A.

directors had breached their fiduciary duties by failing to disclose all the material facts that GenDerm stockholders needed to determine whether to accept the merger consideration or seek appraisal:

> It is undisputed that the GenDerm board provided the GenDerm stockholders with extremely cursory information in connection with the Medicis merger. For example, the GenDerm board did not give the stockholders any current financial information or explain why the merger was in the best interests of the GenDerm stockholders. While the board did tell stockholders they could call the company if they had any questions, the board essentially defaulted on its affirmative obligation to disclose the information material to the decisions it was asking the GenDerm stockholders to make.
>
> Because the inadequacy of the company's disclosures is indisputably clear and because GenDerm's certificate of incorporation contained no exculpatory provision immunizing breaches of the duty of care, the plaintiffs are entitled to partial summary judgment as to the liability aspect of their disclosure claims.[9]

In that opinion, I asked the parties to schedule a conference to chart a course for how the remainder of the litigation should proceed.[10]

At the conference, a schedule was set that reflected the need to determine the class certification issue promptly. Much to the court's surprise, however, the defendants' primary argument opposing class certification now rested on the timing of the court's consideration of that long-ago-filed motion – even though the defendants had every opportunity to raise that timing concern far earlier.

According to the defendants, the court is now powerless to grant class certification because it has already determined that the defendant-directors breached their fiduciary duties. Because this determination is a final decision on the merits (although insufficient in itself to support the entry of a final judgment), the defendants contend that class certification is now inappropriate under Court of Chancery Rule 23(b)(3).

In support of this argument, the defendants cite federal decisions for the proposition that it is generally improper for a court to certify a class under Federal Rule of Civil Procedure 23(b)(3) after a decision on the merits has been made. The defendants further argue that even had there been no ruling on the summary judgment motion, the plaintiffs could only obtain certification of a Rule 23(b)(3) class – but not a Rule 23(b)(1) class – because monetary damages are the primary relief sought by the complaint and because the plaintiffs do not seek rescission of the merger. For these reasons, the defendants now argue that the plaintiffs must pursue this action individually and not on behalf of a class.

Additionally, the defendants claim that this action should not proceed on a class basis because their solicitation efforts were so successful that there is reason to suspect that a healthy percentage of the Proposed Class would not want this action to proceed even if it would result in a monetary recovery to them. That is, the defendants argue that the plaintiffs cannot adequately represent other GenDerm stockholders who have identical legal claims against the defendants but who, on the basis of the influential overtures of Dr. Bernstein and his co-defendants, filled out a form affidavit eschewing their right to pursue those claims.

## II. *Legal Analysis*

I turn to the defendants' arguments now, proceeding in the following order.[11]

---

9. *Turner v. Bernstein II*, Del.Ch., C.A. No. 16190, mem. op. at 1–2, 2000 WL 776893, at *1, Strine, V.C. (June 6, 2000).

10. *Id.*, mem. op. at 41, 2000 WL 776893, at * 16.

11. After oral argument, I determined that the other requirements of Rule 23, particularly

First, I consider whether it is appropriate to certify the Proposed Class under Rule 23(b)(1), as the plaintiffs contend. Then I determine whether my prior grant of summary judgment against the defendant-directors on the issue of liability precludes the certification of the Proposed Class. Finally, I address the defendants' Rule 23(a)(4) argument that the plaintiffs cannot adequately represent the Proposed Class because so many prospective Class members have expressed the wish that this litigation never have been filed.

### A. Is Certification Under Rule 23(b)(1) Appropriate?

■ Court of Chancery Rule 23(b)(1) permits the maintenance of a class action if the requirements of Rule 23(a) are met and if:

(1) The prosecution of separate actions by or against individual members of the class would create a risk of:

(A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or

(B). Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.... [12]

According to the defendants, certification under Rule 23(b)(1) is not appropriate in this case because the only question left is the remedy for the defendant-directors' already-declared breach of fiduciary duties and because the plaintiffs' preferred remedy is quasi-appraisal rights or rescissory damages, i.e., monetary damages. This court may not, the defendants claim, certify a Rule 23(b)(1) class when the claims in

the case are solely for monetary damages; otherwise, Rule 23(b)(1) would swallow Rule 23(b)(3) and leave no room for that separate category of class action.

This argument, however, is at odds with this court's prior practice in addressing stockholder challenges to the conduct of corporate directors in implementing mergers. For example, in *In re Mobile Communications Corporation of America, Inc. Consolidated Litigation,* the plaintiffs' attempt to enjoin a merger had already failed and the court was addressing a settlement where by the class would receive over $34 million in cash and stock plus attorneys' fees in exchange for releasing state and federal claims for monetary damages arising out of the merger that the objectors contended were worth approximately $1.6 billion. Chancellor Allen rejected the objectors' contention that a Rule 23(b)(1) certification was inappropriate. In so doing, Chancellor Allen addressed arguments virtually identical to those asserted by the defendants here, namely, that once it becomes impractical to unwind a merger and damages are the likely remedy, certification under Rule 23(b)(1) or (b)(2) is inappropriate.

Chancellor Allen's well-articulated reasons for rejecting this argument bear repetition here:

> Typically an action challenging the propriety of director action in connection with a merger transaction is certified as a(b)(1) or (b)(2) class because [1] plaintiff seeks equitable relief (injunction); **[2] because all members of the stockholder class are situated precisely similarly with respect to every issue of liability and damages** (*compare Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 [105 S.Ct. 2965, 86 L.Ed.2d 628] (1985)); and **[3] because to litigate the matters separately would subject the defendant to the risk of different stan-**

---

those of Rule 23(a)(1)-(3) were otherwise satisfied.

**12.** Ct. Ch. R. 23(b)(1)(A)-(B).

dards of conduct with respect to the same action.**

The argument has been made that once a preliminary injunction is denied a(b)(2) action should be treated as a(b)(3) action because, practically speaking, damages are the likely remedy if plaintiff prevails. **This argument has been rejected, in part, I suggest, because of concerns reflected in the second and third of the reasons stated above.**

&ast; &ast; &ast; &ast; &ast; &ast;

**Neither the state nor the federal claims are class actions of the type that meld somewhat dissimilar individual claims together for efficient common adjudication, as contemplated by subsection (b)(3). Rather both sets of theories involve one set of actions by defendants creating a uniform type of impact upon the class of stockholders.** The Constitution does not require (*cf. Hansberry v. Lee,* 311 U.S. 32 [61 S.Ct. 115, 85 L.Ed. 22] (1940)), nor do prudential considerations, in my opinion, commend the granting of an opt-out right in stockholder actions attacking the propriety of director conduct in connection with a corporate merger. The propriety of director action should be adjudicated, if it is to be adjudicated, once with respect to all similarly situated shareholders.[13]

That reasoning has full application here. In this case, (1) the defendant-directors either did or did not breach their fiduciary duty of disclosure to all or none of the GenDerm stockholders in the Proposed Class; (2) if the defendant-directors did commit such a breach (as I have held), there is no requirement that any member of the Proposed Class have actually relied upon such breach in order to benefit from a remedy;[14] and (3) thus any monetary remedy due to the Proposed Class will be calculated on a per share, rather than per shareholder, basis. As in *Mobile Communications,* this case therefore involves "one set of actions by defendants creating a uniform type of impact upon the class of stockholders."[15]

Chancellor Chandler reached the same conclusion when addressing a class certification motion in another case identical in all material respects to this case. In *Wacht v. Continental Hosts, Ltd.,* he certified a Rule 23(b)(1) class in his post-trial opinion after concluding that the defendant-directors had breached their fiduciary duties by failing to disclose all the material facts needed by the stockholders of Continental to decide whether to accept the consideration offered to them in a squeeze-out merger or to seek appraisal. He further concluded that the members of the proposed class were entitled to quasi-appraisal damages of $4.90 per share.

The defendants in *Wacht* argued that class certification was inappropriate for several reasons. For now, the most important of those reasons is that during the over nine-year pendency of that litigation, no other stockholders had filed suit and thus (defendants contended) there was no

---

**13.** *In re Mobile Communications,* mem. op. at 34, 36–37, 1991 WL 1392, at *15,*16 (emphasis added).

**14.** *Malone v. Brincat,* Del.Supr., 722 A.2d 5, 12 (1998).

**15.** *In re Mobile Communications,* mem. op. at 36, 1991 WL 1392, at *16. *See also Hynson v. Drummond Coal Co., Inc.,* Del.Ch., 601 A.2d 570, 575 (1991) (noting that in a challenge to corporate transactions, "the particularities of any holder would have no bearing on the appropriate remedy" and every material issue in the case would affect all of the class equally – and thus a non-opt-out Rule 23(b)(1) class action was proper); *Joseph v. Shell Oil Co.,* Del.Ch., C.A. No. 7450, mem. op. at 12–13, 1985 WL 21125, at *5, Hartnett, V.C. (Feb. 8, 1985) (certifying a Rule 23(b)(1) class in a case where monetary damages were the primary relief sought because "if a finding of damages occurs, the damages will be mathematically allocated on a per share basis to all stockholders in similar circumstances" and "[t]here is a total absence of individual issues and therefore there would be no reason for the court to make a separate finding of damages as to each share or each shareholder").

realistic chance of inconsistent judgments and no chance of prejudice to absent class members if no Rule 23(b)(1)(B) certification was granted. Chancellor Chandler concluded otherwise, stating:

> Subsection B of Rule 23(b)(1) permits class certification where the risk exists that adjudication of a single shareholder's claim may have *res judicata* effect on the claims of other absent shareholders, thereby prejudicing those absent shareholders if the class is not certified. Defendants argue that no shareholder, other than plaintiff, has expressed an interest in this action during all nine years of its pendency. Thus, they contend that there is no real threat of prejudice to other Continental shareholders if I adjudicate this case as an individual action. I disagree. First, defendants' argument in this regard is purely conjectural – they offer no concrete evidence that other absent Continental shareholders have no interest in plaintiff's suit. . . . In fact, it is possible that some Continental shareholders are aware of this action, and are under the impression (from the complaint) that it was brought on their behalf, as well. Second, the Court must keep in mind its limited judicial resources and attempt to pursue the most efficient course of action. Here, that course is certifying the class under Rule 23(b)(1). The possibility exists of other litigation similar or

identical to plaintiff's, which compels me to attempt to resolve that litigation at one time, if possible. Certifying plaintiff's suit as a class action pursuant to Chancery Court Rule 23(b)(1)(B) accomplishes that purpose. Accordingly, plaintiff's motion for class certification is granted.[16]

This reasoning is not idiosyncratic to the Delaware Court of Chancery. To the contrary, it comports with that advanced by some of the most learned commentators on the application of the Federal Rules of Civil Procedure, who view Rule 23(b)(1) as "applicable when practical necessity forces the opposing party to act in the same manner toward the individual class members and [as] thereby mak[ing] inconsistent adjudications unworkable or intolerable."[17] Put another way, Rule 23(b)(1) "clearly embraces cases in which the party is obliged by law to treat the class members alike . . . [,]"[18] including claims seeking money damages.[19]

In such cases, "the class members by definition have highly similar interests and generally are seeking damages and the enforcement or prohibition of some course of conduct by the opposing party that affects all of them much the same way. As a result, basically only one recovery is sought and the determination of the overall amount and the sum due each class member is not difficult."[20] This contrasts

---

16. *Wacht*, mem. op. at 22–23, 1994 WL 525222, at *10.

17. 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1773, at 434 (1986) (hereinafter "WRIGHT, MILLER & KANE").

18. *Id.* § 1773, at 433. Although this sentence technically refers only to subsection (b)(1)(A) of Rule 23, a fair reading of *Wright, Miller & Kane* suggests that the authors would agree that this view also applies to subsection (b)(1)(B). *See, e.g., id.* at § 1772, at 421–26 (1986) & 71 (2000 Supp.).

19. *E.g., id.* at § 1789, at 41 (2000 Supp.).

20. *Id.,* § 1784, at 77. The Advisory Committee Notes to the 1966 amendments to Federal Rule 23 generally support the application of Rule 23(b)(1) to cases like this one:

> [A]ctions by shareholders to compel the declaration of a dividend[,] the proper recognition and handling of redemption or pre-emption rights, or the like (or actions by the corporation for corresponding declarations of rights) should ordinarily be conducted as class actions, although the matter has been much obscured by the insistence that each shareholder has an individual claim. . . . The same reasoning applies to an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or

with actions under Rule 23(b)(3) where the "members are loosely bound together by common questions of law or fact and considerations of convenience. Even the damages they seek generally are individual in character and disparate in amount." [21]

Closely read, the case the defendants primarily rely upon for the proposition that a Rule 23(b)(1) class cannot be certified in a case involving compensatory damages – *In re Dennis Greenman Securities Litigation* [22] – actually relies upon a rationale consistent with the reasoning of commentators Wright, Miller, and Kane and with the *Mobile Communications* and *Wacht* decisions. In *In re Dennis Greenman Securities,* the court held that it was improper to certify a class under Rule 23(b)(1)(A) because "courts reason that inconsistent standards for future conduct are not created because a defendant might be found liable to some plaintiffs and not to others" and "that if compensatory damage actions can be certified under Rule 23(b)(1)(A), then all actions could be certified under the section, thereby making the other subsections of Rule 23 meaningless, particularly Rule 23(b)(3)." [23]

*Greenman's* logic has some force as to the type of damage cases that frequently come to federal courts in class action clothing, particularly those diversity class actions that arise under state tort law. In such class actions, the individual circumstances of each class member are typically of material importance, and it is not infrequently the case that the substantive state laws governing class members' individual claims are widely disparate. [24] But that logic does not apply to cases like this one. In challenges to corporate mergers brought on behalf of the stockholders not affiliated with the defendants, it is virtually never the case that there is any legitimate basis that "a defendant might be found liable to some plaintiffs and not to others." [25] Rather, the actions involve a challenge to a single course of conduct by the defendants that affects the stockholder class equally in proportion to their ownership interest in the enterprise.

That such actions can be certified under Rule 23(b)(1)(A) hardly makes all claims for damages certifiable under that subsection. Rather, there remains an abundance of damage claims involving common *and* uncommon issues of law or fact that can be asserted on a class basis only by meeting the criteria applicable under the more flexible Rule 23(b)(3). In this respect, it is in reality the *Greenman* court's reading that is more likely to render a subsection of Rule 23(b) meaningless. By holding that a Rule 23(b)(1)(A) class can be certified only for claims for injunctive and declaratory relief, the *Greenman* court renders Rule 23(b)(1) largely redundant of Rule 23(b)(2), which expressly addresses injunctive and

---

like measures to restore the subject of the trust....

*Advisory Committee Notes for the Federal Rules of Civil Procedure for the United States District Courts, Rule 23, 1966 Amendment* (hereinafter *"Advisory Committee Notes to 1966 Amendments to Federal Rule 23"*) (citations omitted), *reprinted in* 12A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, & RICHARD L. MARCUS App. C. at 286–87. *Cf. Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 119 S.Ct. 2295, 2309, 144 L.Ed.2d 715 (1999) (citing this history and noting that a "classic" example of when Rule 23(b)(1)'s conditions are satisfied is an action by "shareholders to declare a dividend or otherwise fix their rights") (citation omitted).

**21.** 7B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, § 1784, at

77; *see also id.* § 1786, at 194–95 (making same point about the distinctions between a Rule 23(b)(1) or (2) class and a Rule 23(b)(3) class).

**22.** *In re Dennis Greenman Securities Litig.,* 829 F.2d 1539 (11 th Cir.1987), *reh'g denied sub nom. Namoff v. Merrill, Lynch, Pierce, Fenner & Smith,* 840 F.2d 25 (11 th Cir. Feb 12, 1988) (en banc).

**23.** *Id.,* 829 F.2d at 1545.

**24.** *See, e.g., Ortiz,* 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715.

**25.** *In re Dennis Greenman Securities,* 829 F.2d at 1545.

declaratory relief.[26] For this reason also, I respectfully must part company from the apparently contrary decision in *Dieter v. Prime Computer, Inc.*[27] and join the position taken in *Wacht, Mobile Communications, Hynson,* and *Joseph* decisions.[28]

In my view, the case now before the court fits neatly within the application of our court's Rule 23(b)(1) in those cases.[29] None of the legal or factual issues at stake in this case turn on issues individual to class members.[30] Rather, all of the issues affect class members equally. It would be wasteful and illogical to have this matter tried several times, so that different courts could reach irreconcilable decisions about identical issues such as the adequacy of the disclosures made to GenDerm stockholders by the defendant-directors and the fair value of GenDerm on the date of the Merger.[31] The devotion of scarce judicial resources to repetitive exercises of this sort on behalf of one identically situated class quite obviously would come at a large price to other litigants who need judicial attention.[32]

**26.** *Cf. Advisory Committee Notes to 1966 Amendments to Federal Rule 23,* 12A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, & RICHARD L. MARCUS, App. C. at 288, 285–88 (expressly stating that Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates expressly or predominantly to money damages" but not making a similar statement about Rule 23(b)(1)).

**27.** *Dieter v. Prime Computer, Inc.,* Del. Ch., 681 A.2d 1068, 1075–76 (1996).

**28.** *See also Nebel v. Southwest Bancorp, Inc.,* Del.Ch., C.A. No. 13618, tr. at 6–7, Jacobs, V.C. (Oct. 29, 1997) (certifying a Rule 23(b)(1) class in a post-merger fiduciary duty case involving a damages claim in reliance on *Wacht* and *Mobile Communications* and describing *Dieter* as a discretionary decision to apply 23(b)(3) rather than (b)(1) as opposed to a holding that this court "lacks the power to certify under subsection (b)(1)" in such a case).

**29.** In concluding that certification of a Rule 23(b)(1) class is appropriate, I am cognizant of the concern that the Due Process Clause of the United States Constitution might require that the members of the class be given the right to opt out. Although the defendants raised this point obliquely at oral argument, they have failed to present that argument fairly. Much less have they provided the court with briefs addressing this issue on more than a cursory basis. For now, therefore, I am content to rely on the well-reasoned analysis of Chancellor Allen in both the *Mobile Communications* and *Hynson* cases and on the views of learned commentators such as Wright, Miller, and Kane that as long as (1) the class fits within the rigorous requirements of Rule 23(b)(1); (2) there is adequate class notice; and (3) the other requirements of Rule 23 are satisfied, then sufficient guarantees of adequate representation and fairness exist so as to preclude the need for an opt-out mechanism. *In re Mobile Communications,* mem. op. at 36–37, 1991 WL 1392, at *16 (federal due process clause does not require granting of an opt-out right "in stockholder actions attacking the propriety of director conduct in connection with a corporate merger"); *Hynson,* 601 A.2d 570 (holding that a single adjudication by a court of the corporation's state of incorporation may bind all stockholders, regardless of residence, in a proper Rule 23(b)(1) and (b)(2) class action involving claims of breach of fiduciary duty against the corporation's directors and that no opt-out rights had to be afforded to class members); 7B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE § 1789, at 41–42 (2000 Supp.) & § 1789, at 255–56 (1986) (suggesting that no opt-out is required for Rule 23(b)(1) classes). And as adverted to above, the recent federal cases, such as *Ortiz,* arise in the far different context of class actions in which the individual circumstances of each plaintiff differ in materially important respects. If the defendants wish to revisit this argument, however, they are free to do so, Ct. Ch. R. 23(c)(1), but they should be mindful to address the issue squarely, which would require a thoughtful attempt to distinguish *Hynson,* a case the defendants do not even address.

**30.** *Hynson,* 601 A.2d at 575.

**31.** *Id.* at 575–76 (litigative efficiency is a relevant concern in the application of Rule 23); *Wacht,* mem. op. at 22–23, 1994 WL 525222, at *10 (same). As in *Wacht,* it is probable that there are members of the class who are aware of this action and relying upon it as a means to secure relief. If a class is not certified here, some of them may well bring their own indistinguishable actions.

**32.** *Wacht,* mem. op. at 22, 1994 WL 525222, at *10.

As Wright, Miller, and Kane point out, class actions usually meet both subparts of subsection (b)(1) of Rule 23 or neither of them.[33] Although the language of Rule 23(b)(1)(A) is somewhat unclear, I believe that it would "establish incompatible standards of conduct"[34] for the defendants if, for example, they were found to owe $2.00 a share in quasi-appraisal and/or rescissory damages to plaintiffs Turner and Bernstein in this case but $3.00 in quasi-appraisal and/or rescissory damages to identically situated plaintiffs in another case. If not for the defendants' unusual tactic of securing "opt-out affidavits," the defendants themselves would probably agree.

Otherwise, individual plaintiffs could file test cases that could then set, at the very least, a practical damages floor for subsequent plaintiffs. What could be more maddening for corporate defendants than to be locked into a quasi-appraisal award but possibly subject to having to pay a larger amount if a subsequent plaintiff who is identically situated seeks and obtains a higher award? The practical need of corporate defendants to treat all stockholders equally and the more powerful role *stare decisis* plays in this context (which I next discuss) suggest that Rule 23(b)(1)(A) is satisfied in cases such as this one.[35]

■ Certification under Rule 23(b)(1)(B) is equally appropriate. That subsection is satisfied where there is a "risk" that an individual adjudication would "as a practical matter be dispositive" of the interests of other class members.[36] Here, there is no doubt that there is a "risk" that the disposition of this case as a "practical" matter will influence the disposition of fu-

ture identical cases for members of the Proposed Class. In so concluding, I acknowledge that there is federal case law indicating that the mere fact that a prior adjudication will have *stare decisis* effect is not sufficient to satisfy Federal Rule 23(b)(1)(B). But for many of the reasons cited in the *Mobile Communications, Wacht, Joseph,* and *Hynson* cases, the reality is that a determination in one case that directors have or have not breached their fiduciary duties in implementing a transaction and of the per share damages to be awarded for any such breach has a profoundly "practical" and "dispositive" effect on future cases.[37] This is especially so if the judgment in the first case is affirmed on appeal by our Supreme Court. Given the importance Delaware rightly places on the consistent administration of our state's corporate law, it could hardly be otherwise.

A recent decision of this court illustrates the "practicalities" of this issue well. In *Kohls v. Kenetech Corp.,*[38] it was held that plaintiffs were not bound by the judgment in a prior non-class action rejecting claims that a corporation and its directors breached their contractual and/or fiduciary duties in connection with certain transactions. Nonetheless, the plaintiffs' complaint, which challenged the same transactions, was dismissed under Rule 12(b)(6) because the plaintiffs could not distinguish the facts or theories underlying their claims from those adjudicated in the prior case:

[T]his court considered all of the arguments here advanced and held contrary to the plaintiffs' position. That opinion has now been affirmed by the Supreme Court and conclusively represents the law of this State. Allowing the parties

**33.** 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE § 1772, at 421–26 (1986) & 71 (2000 Supp.).

**34.** Ct. Ch. R. 23(b)(1)(A).

**35.** *Hynson,* 601 A.2d at 575 (reaffirming prior certification of a Rule (b)(1)(A) class in a case challenging fiduciary behavior in connection with a consummated merger).

**36.** Ct. Ch. R. 23(b)(1)(B).

**37.** *Id.*

**38.** *Kohls v. Kenetech Corp.,* Del.Ch., C.A. No. 17763, mem. op. at 12–17, 2000 WL 1041220, at *4— *6, Lamb, V.C. (July 26, 2000).

to litigate about settled issues is an affront to both courts.[39]

B. *Does The Fact That This Motion Is Being Decided After Summary Judgment On Liability Was Granted Against The Defendant–Directors Preclude Certifying A Class?*

■ Premised largely on their argument that a Rule 23(b)(1) class cannot be certified, the defendants have advanced the argument that no class may be certified here because the plaintiffs have pressed for a decision on this motion too late. On a Rule 23(b)(3) class motion, the defendants assert, a ruling on class certification must precede any determination on the merits, not just a final judgment.

I reject the defendants' argument that it is too late to certify a class. Initially, I note that because certification under Rule 23(b)(1) is appropriate, the defendants' argument loses much, if not all, of its force. The federal cases that frown upon certifying a class after any merits determination mostly address the Rule 23(b)(3) context, in which notice and an opportunity for class members to opt out is mandatory.[40] Even in that context, it is by no means settled that a federal court may *never* certify Rule 23(b)(3) class after any merits ruling.[41] Regardless, a more relaxed approach is generally taken to cases arising under Federal Rules 23(b)(1) and (b)(2).[42]

39. *Id.*, mem. op. at 17, 2000 WL 1041219, at * 6.

40. This heightened concern in the Rule 23(b)(3) context arises because of the mandatory opt-out feature that is integral to that kind of class. The concern is that named plaintiffs will seek to certify a class only after the defendants have suffered an adverse merits ruling, thus deferring the opt-out election until such time as there is virtually no uncertainty for prospective class members. The discouragement of this so-called "one-way" intervention was an intended purpose behind the 1966 amendments to Federal Rule 23. *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 547, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), *reh'g denied*, 415 U.S. 952, 94 S.Ct. 1477, 39 L.Ed.2d 568 (1974); *Jimenez v. Weinberger*, 523 F.2d 689, 698 (7 th Cir.1975), *cert. denied*, 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976). The lack of a right to opt out of a Rule 23(b)(1) or (b)(2) class itself minimizes the potential for such prejudice and has been held to justify a more flexible approach. *E.g., Jimenez*, 523 F.2d at 697–99; H.B. NEWBERG & A. CONTE, 2 NEWBERG ON CLASS ACTIONS § 7.15, at 7–54 (3d ed.1992) (hereinafter "NEWBERG") (one-way intervention concerns present in Rule 23(b)(3) context do not operate under Rule 23(b)(1) or (2) so as to preclude an earlier or simultaneous merits determination).

41. *See* 7B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE § 1785, at 98–100 (1986) & 16–18 (2000 Supp.) (discussing the divergent federal decisions on this issue); 2 NEWBERG § 7.15, at 7–54 (noting that it is "unsettled" whether summary dispositions on the merits may be

proper in a class action under Federal Rule of Civil Procedure Rule 23(b)(3)).

42. Indeed, the defendants go so far as to concede that if they are wrong about their argument that Rule 23(b)(1) does not apply, then their timing argument falls by the wayside. Because I do not think the federal cases are so clear-cut, I therefore address the substantive thrust of the defendants' argument.

A few of the cases the defendants cite show the murky nature of this area of federal jurisprudence. For example, *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270 (10 th Cir.1977), reversed a district court's denial of class certification which was made simultaneously with its post-trial liability finding in favor of the plaintiffs. The Circuit Court expressed disapproval of the trial court's delay but, more importantly, went on to remand the case so that a certification order could be entered that would allow the entire class to take advantage of the favorable ruling. In the course of its decision, the court expressly noted cases recognizing that "when the actions and assumptions of the parties and the trial court show clearly that the action was treated as a class action, a post trial certification by the trial court *or the Court of Appeals* ... that comports with the requirements of Rule 23(a) and (b) will stand." *Id.* at 274 n. 1 (emphasis added). Likewise, in *Jimenez* the Court of Appeals for the Seventh Circuit upheld a district court's decision to grant class certification when the case was remanded to it *after* an important merits ruling in favor of the plaintiffs had been made by the United States Supreme Court. Although the Court of Appeals recognized the strong policy against certifying a class after a merits determination, it

The more substantive reason for rejecting the defendants' argument is that it is premised on an unduly rigid and inflexible approach taken by some federal courts that this court has rejected as a matter of Delaware law for the sound reasons stated in *Wacht*. There, the plaintiffs did not move for class certification until nine years into the case and the court deferred that motion to a post-trial determination. As noted previously, in its post-trial opinion, the court first decided the merits, found that the defendants had breached their fiduciary duties, and awarded $4.90 a share in damages against the defendants. Only then did it go on to address the issue of class certification.

The defendants argued that the court could not certify the class at that late stage because the class certification motion had not been brought "[a]s soon as practicable" as is required by subsection (c)(1) of Rule 23. The court rejected that argument, stating:

Although defendants cite numerous federal cases for the proposition that delay in filing for class certification is adequate grounds for denial of that certification, I am convinced that the law in Delaware requires a showing of actual prejudice to deny properly class certification because of a delay in requesting certification.... In particular, defendants cannot show prejudice because ... plaintiff drafted his complaint as a class action. As a result, plaintiff will not need to amend the complaint if I grant his motion for class certification. Moreover, the class allegations in the complaint put defendants on notice that plaintiff's action may be converted into a class action. Thus, from the outset of this case, defendants knew that plaintiff's suit was potentially a class action. Accordingly, I am of the opinion that defendants have not shown that they will suffer actual prejudice if I grant plaintiff's motion for class certification.[43]

■ Similarly, Wright, Miller, and Kane note that "it generally seems agreed that certification at the judgment stage is not automatically prohibited. However, it must be undertaken cautiously, taking into account whether the lateness of the certification is prejudicial to the parties who may have tried the case differently had they been aware that a class judgment was at stake."[44]

Here, there can be no conceivable prejudice to the defendants by the timing of this

concluded nonetheless that the rule "contemplates some flexibility in its enforcement" and that the district court's decision to certify a Rule 23(b)(2) class was not erroneous. *Id.* at 702. Finally, *Paxton v. Union National Bank* held that it was error for the district court to deny certification of a Rule 23(b)(2) class after trial when both parties had acquiesced in the delay of the certification issue, the parties had proceeded as if the case was a class action, and there was no prejudice to either the defendants or absent class members. *Paxton v. Union National Bank*, 688 F.2d 552, 558–59 (8th Cir.1982), *cert. denied*, 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983).

**43.** *Wacht*, mem. op. at 19–20, 1994 WL 525222, at *8– *9. *Wacht* is not the only case in which this court has taken such an approach. *See, e.g., Zimmerman v. Home Shopping Network, Inc.*, Del.Ch., C.A. Nos. 10911 & 10919, mem. op., 1990 WL 118363, Jacobs, V.C. (Aug. 14, 1990, rev.Aug. 30, 1990) (in same opinion, court granted summary judg-

ment on liability against defendants, certified two classes of holding and converting bondholders, respectively, who sought primarily declaratory and injunctive relief under Rule 23(b)(2), and provisionally certified a class of selling bondholders who sought monetary damages under Rule 23(b)(1) or (b)(3) but deferred a decision as to which subsection would apply until receipt of further briefing), *motion to amend denied*, Del.Ch., 1990 WL 140890, (Sept. 25, 1990), *appeal denied*, 582 A.2d 935 (1990); *Nebel v. Southwest Bancorp, Inc.*, Del.Ch., C.A. No. 13618, mem. op., 1995 WL 405750, Jacobs, V.C. (July 5, 1995) (holding that the defendants violated their disclosure duties in connection with a merger and indicating that an award of quasi-appraisal rights for the stockholders was the appropriate remedy) & *Nebel*, tr. at 7 (Oct. 29, 1997) (certifying Rule 23(b)(1) class two years later).

**44.** 7B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE § 1785, at 99–100 (1986).

certification decision, which is made well in advance of any final judgment on the merits. The plaintiffs' certification motion was timely filed. From that motion and the face of the complaint, as well as the plaintiffs' consistent conduct of this litigation as a representative one, the defendants were on full notice of the class action character of the claims they were facing. As noted, the defendants even went so far as to solicit non-participation affidavits from members of the Proposed Class.

Had the defendants wanted an earlier determination of the class issue, they could have filed an answering brief and asked this court to decide the motion promptly. That would have protected them against any legitimate prejudice and, to be candid, would have been much appreciated by the court. They did not do so. Instead, they, like the plaintiffs,[45] made their own tactical decision to defer the resolution of the certification issue until now.[46] It is not unfair to require them to accept the consequences of their own choice, which I deem to constitute acquiescence.[47]

In ruling as I do, I admit that there is some tension caused by the fact that the language of Rule 23(c)(1) that permits modification of a class certification order at any time before "*the* decision on the merits" can be read as a rigid bar to class certification after "*a* decision on the merits" has been made. But the words "*the* decision on the merits" are perhaps better read as being a poor substitute for the words "*the* final judgment" and, in any case, have not been construed by either the Delaware courts or the federal courts as creating some insurmountable barrier to class certification after any merits decision in a case has been made.[48] Certainly, it would make little sense to conclude that this court may issue its certification decision after trial at the same time it enters a final judgment on all the merits, as in *Wacht*, but cannot do so well before trial when there is no prejudice and when no final judgment is imminent.

## C. Do The Affidavits Solicited By Dr. Bernstein Preclude Class Certification?

■ The defendants' final argument is a rather novel one. As noted, Dr. Bernstein (and others of the defendant-directors) went out and pedaled a form affidavit to potential class members through an organized solicitation effort. That form affidavit indicates that the affiant objects to this lawsuit, does not wish it to proceed, and has no interest in any recovery that will result from it. Because a large amount of GenDerm's stock was held by the defendants or their affiliates, the defendants were able to obtain affidavits from stockholders who owned an overwhelming majority of the GenDerm shares before the Merger. As such, it is not surprising that the vast majority of the shares represented by the affiants are not even owned by members of the Proposed Class – a class

45. Plaintiffs' Reply Br. at 9.

46. *E.g., Smith v. Bounds,* 813 F.2d 1299, 1305–06 (4th Cir.1987) (finding no reversible error where district judge certified a class five months after granting summary judgment against the defendants because, in addition to the plaintiffs' satisfaction of the certification requirements and the absence of prejudice to the defendants, the defendants had "conducted the litigation as a class suit" and would not be prejudiced), *reh'g granted,* 821 F.2d 222 (4th Cir.1987), *on reh'g,* 841 F.2d 77 (4th Cir.1988) (en banc) (affirming district court), *cert. denied,* 488 U.S. 869, 109 S.Ct. 176, 102 L.Ed.2d 146 (1988).

47. *See Paxton,* 688 F.2d at 558–59 (defendant could not claim prejudice where it acquiesced to delay of certification decision until after trial and thus could not rely on untimeliness to defeat the certification of a class on that basis); *cf. Katz v. Carte Blanche Corp.,* 496 F.2d 747, 761 (3d Cir.1974) (defendant may expressly waive the right to a timely class certification decision), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974).

48. *Wacht,* mem. op. at 19–20, 1994 WL 525222, at *8–*9; *Zimmerman,* 1990 WL 118363, at *15—*16; 7B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE § 1785.

that expressly excludes the defendants and their affiliates. Moreover, the plaintiffs note that most of the affidavits are now over two years old.

Nonetheless, having won this self-initiated plebiscite, the defendants now contend that the majority has spoken and that there is an undeniable antagonism between the interests of a large percentage of the Proposed Class and the named plaintiffs.[49] On this ground, they say, the named plaintiffs are not adequate representatives of the Proposed Class and that certification must be denied under Court of Chancery Rule 23(a)(4).

Without dilating on the propriety of the defendants' solicitation efforts, I conclude that the named plaintiffs will adequately represent the legal interests of the Proposed Class in this action.[50] In so concluding, I start by reiterating that the plaintiffs do not propose to include the defendants or their affiliates in the Class. As such, no member of the Proposed Class will suffer harm if this action proceeds. While the affiants may not gain from the action if no damages or other relief is awarded to the Proposed Class, they face no injury in that scenario. On the other hand, the Proposed Class stands to gain financially if an award of quasi-appraisal or rescissory damages is determined to be appropriate.

The mere fact that some members of the Proposed Class may not want to hold the defendants accountable for breaches of fiduciary duty does not create a conflict precluding class certification. "In other words, the class member[s] who wish[ ] to remain ... victim[s] of unlawful conduct do[ ] not have a legally cognizable conflict with the class representative."[51]

In this case, moreover, it would be irresponsible to deny class certification on the basis of the proffered affidavits. The defendants have presented the court with no reliable basis to conclude that Dr. Bernstein (or the other defendant-directors) gave the affiants a balanced rendition of the case or their legal rights. While the affidavits state that the affiants were told where they could get additional information, form affidavits of this sort resulting from unsupervised, one-sided communications to class members are entitled to very little, if any, weight. As the Court of Appeals for the Eleventh Circuit has noted:

> Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts without opportunity for rebuttal. The damage from misstatements could well be irreparable.[52]

49. By the plaintiffs' count, 41 of the affidavits were from members of the 127–member Proposed Class.

50. The named plaintiffs, through their counsel, have thus far conducted this litigation with skill and vigor.

51. 1 NEWBERG § 3.30, at 3–153. *See also Norwalk CORE v. Norwalk Redevelopment Agency*, 395 F.2d 920, 937 (2d Cir.1968) (the fact that some class members believed that the defendant agency's conduct was acceptable did not preclude a class action challenging that conduct).

52. *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir.1985); *see also Jenifer v. Delaware Solid Waste Authority*, 1999 WL 117762, at *2 (D.Del. Feb. 25, 1999)

(Schwartz, J.) (emphasizing the concerns raised by communications between defendants and prospective class members and noting that "[t]his court has condemned a defendant's communications attempting to affect a class member's decision to participate in the litigation"); *In re McKesson HBOC, Inc. Securities Litig.*, 2000 U.S. Dist. LEXIS 5828, at *10–*11, 126 F.Supp.2d 1239, 1243 (N.D.Cal. 2000) (limiting pre-certification communications designed to generate opt-outs because there "is no meaningful opportunity to choose when a concerted multimedia effort is made to secure opt-out authorizations before any class is certified"); MANUAL FOR COMPLEX LITIGATION § 30 .24, at 233 (3d ed. 1995) ("Defendants ordinarily are not precluded from communications with putative class members, including discussions of settlement offers with individual class members before certification, but may not give false or mis-

It would encourage future tactics of this sort to refuse to certify a class in this case on the basis of affidavits of the kind procured by Dr. Bernstein and his fellow defendants-directors.[53] Although this action will proceed under Rule 23(b)(1) and therefore no opt-out right must be afforded to Class members, I will, however, direct the parties to confer with one another regarding when notice should first be provided to the Class and what the contents of that notice should be. After further input from the parties, a decision can be made whether to include a provision in the notice enabling Class members to renounce any right to their aliquot share of the proceeds of any recovery, net of fees and expenses awarded by the court. This sort of provision would preserve the legitimate interests of any affiants who continue to object to this lawsuit and I see no reason to compel any Class member to accept her portion of a damages award, if one is made. On the other hand, there is no rational basis to presume (as the defendants would have me do) that all of the affiants will renounce their right to share in any recovery achieved in this lawsuit

once they have received a balanced recitation of the relevant facts in a court-approved notice. It would also seem advantageous *to the Proposed Class, if not to the defendants,* to permit any renunciation option to be exercisable at the latest possible time.[54]

### III. *Conclusion*

For the foregoing reasons, the plaintiffs' motion for class certification is granted. Counsel for the plaintiffs should submit a conforming order, upon approval by the defendants as to form, and counsel shall schedule an office conference to discuss notice to the Class and the identification of the precise members of the Class, after such time as they have conferred in good faith and tried to reach agreement about those issues.

leading information or attempt to influence class members in making their decision whether to remain in the class.'').

**53.** In this regard, it is noteworthy that the plaintiffs have cited deposition testimony indicating that the GenDerm directors were informed by counsel that they had a duty to disclose all the material facts to the GenDerm stockholders. Silverman Dep. at 52–53. But as indicated in my prior opinion, the disclosures actually made fell far short of a serious affirmative effort to provide all the material facts necessary to the decision the GenDerm stockholders faced. Thus the plaintiffs contend that the defendants' failure to disclose all the material facts was intentional.

While that assertion remains to be proven, the testimony cited by the plaintiffs does highlight the danger of relying on the affidavits solicited by Dr. Bernstein and his fellow defendant-directors. As defendants to non-frivolous claims of intentional wrongdoing, Dr.

Bernstein and his fellow defendant-directors can hardly be deemed objective commentators on the litigation. Whether or not they tried their best to be unbiased in their solicitation efforts, the preferable approach is to permit class members to express their views after receiving a notice that has been reviewed by the court.

**54.** At oral argument, counsel for the defendants admitted that this case is paradoxical because the defendants are simultaneously arguing on behalf of themselves as defendants and on behalf of their view of the best interests and rights of the Proposed Class. This paradox was created by the defendants' rather innovative strategy, which involved aggressive out-of-court efforts to defeat class certification and torpid in-court efforts to do so. Of course, there is one common element to all of the arguments made by the defendants: if successful, each argument limits the defendants' exposure to monetary liability to the Proposed Class.